**ELECTRIC FETUS COMPANY, INC., et al., Respondents,**

**v.**

**CITY OF DULUTH, et al., Appellants.**

**No. C2–95–2434.**

Court of Appeals of Minnesota.

May 14, 1996.

George R. Dunn, Larry B. Leventhal &
Associates, St. Paul, for Respondents.

William P. Dinan, City Attorney, M. Alison Lutterman, Asst. City Attorney, Duluth, for Appellants.

Considered and decided by PETERSON, P.J., HUSPENI and MULALLY,* JJ.

## OPINION

HUSPENI, Judge.

Appellants claim the district court erred in denying their summary judgment motion based on a claim of qualified immunity, arguing that the record does not support a conclusion that the officer knowingly used false information in the search warrant application or that city policies were a cause of constitutional injuries. Because we conclude that there are material fact issues regarding immunity and that the undisputed information contained in the search warrants is insufficient to sustain a finding of probable cause, we affirm.

## FACTS

Respondent Electric Fetus Company, Inc. is a Minnesota corporation that operates retail stores in Minneapolis, St. Cloud, and Duluth. The Electric Fetus store in Duluth sells recorded music, musical instruments, gift items, jewelry, clothing, tobacco and herbal blends, and tobacco and herbal smoking items.

In March 1994, the City of Duluth (City) Police Department began an investigation of illegal drug paraphernalia sales in Duluth. This investigation included having a civilian informant purchase a pipe from the Electric Fetus on three different occasions.

Based on these controlled buys, Officer Charles Hurst applied for and obtained a search warrant to search the Electric Fetus store for drug paraphernalia. In the affidavit accompanying the search warrant, Hurst stated that the informant asked for and referred to each pipe as a "pot pipe" when making the purchases. The police department executed the search warrant and seized various pipes, ashtrays, pipe cleaners, scales, mirrors, display signs, and an invoice.

Respondent subsequently commenced action against appellant City pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, Article I, § 10 of the Minnesota Constitution, and Minn.Stat. §§ 626.21 and 555.01. Respondent alleged that appellant Hurst knowingly or recklessly presented false and fictitious information in his search warrant application affidavit and that the search warrant was not supported by probable cause.

After commencement of respondents' action, Hurst again applied for and obtained a search warrant to search the Electric Fetus. According to the search warrant application, the purpose of the search was to obtain employee records and photographs of employees. In the accompanying affidavit, Hurst stated:

> [I]t has been determined through investigation that certain individuals may have been involved in the distribution of drug paraphernalia from the Electric Fetus, and identification of those individuals is necessary to bring those individuals to justice and for investigative purposes. Photographs of all employees will reveal through the use of a photo lineup the identity of those individuals that had sold drug paraphernalia illegally from the business of the Electric Fetus * * *.

> *     *     *     *     *     *

> The investigation of the distribution and sale of drug paraphernalia from the premises of the Electric Fetus involved a concerned citizen acting in an undercover capacity who purchased items from this business after having told the sales clerk that he intended the items purchased to be used for illegal drugs.

The police department executed the search warrant, photographed ten Electric Fetus employees, and retained the photographs.

Respondents subsequently amended their complaint, adding additional plaintiffs and defendants, and alleging that Hurst's affidavit accompanying the second search warrant application was based on false and fictitious

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-
pointment pursuant to Minn. Const. art. VI, § 10.

information and that the officers' actions in photographing the employees violated their constitutional rights.

Appellants moved for an order dismissing the action or, in the alternative, for summary judgment on the grounds that: (1) pursuant to Minn. R. Civ. P. 12.02, respondents failed to state a claim for which relief can be granted, (2) appellants are entitled to qualified immunity, or (3) appellants are entitled to absolute immunity.

In denying appellants' motion for summary judgment, the district court stated:

> There appears to this Court to be factual issues that go far beyond the claim of immunity. [Respondents'] action seems to stem from the second search warrant and the actions based on the premise of the sale of drug paraphernalia.
>
> There appears to be factual disputes and such should be submitted to a factfinder.

## ISSUE

Did the district court err in denying appellants' motion for summary judgment?

## ANALYSIS

Although the issue was not raised by either party, we ask initially whether this court should entertain this appeal. In *Carter v. Cole*, 526 N.W.2d 209 (Minn.App.1995), *aff'd* 539 N.W.2d 241 (Minn.1995), this court stated:

> [W]e find no case law allowing a governmental official an interlocutory appeal from a motion denying summary judgment where the only issue raised on appeal is the sufficiency of the evidence on the factual allegations. An order denying a motion for summary judgment on the factual merits does not become appealable merely because the motion is couched in terms of qualified immunity.

*Id.* at 213. The supreme court affirmed the decision in light of the reasoning of *Johnson v. Jones*, — U.S. —, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (holding that the district court's determination that summary judgment record in qualified immunity case raised genuine issues of fact concerning officers' involvement in alleged beating was not

a "final decision" within meaning of appellate jurisdiction statute and, thus, was not immediately appealable). In its affirmance, the Minnesota Supreme Court stated:

> We do not here consider or determine the appealability of an order denying summary judgment where the genuine issues of material fact identified by the trial court are related to the issue of immunity, and not to the merits of the claim.

*Cole*, 539 N.W.2d at 241.

■ Given the supreme court's observations, we believe the appealability of the present case is an open question because the genuine issues of material fact are related to the issue of immunity rather than to the merits of the claim. Despite our concerns, we note that neither party raised the issue of appealability, nor have the parties had an opportunity to brief this issue. We shall therefore address the merits of appellants' challenge to the denial of summary judgment based on immunity.

### Standard of Review

■ On appeal from summary judgment, the role of this court is to review the record for the purpose of answering whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). The facts asserted by the nonmoving party must be taken as true. *Hauser v. Mealey*, 263 N.W.2d 803, 805 n. 1 (Minn.1978).

### Qualified Immunity

Respondents have alleged that Hurst knowingly or recklessly presented false and fictitious information in his affidavits supporting the search warrant applications, thereby violating respondents' constitutional rights, and that without the disputed information, the search warrants lack probable cause. Appellants claim that they are entitled to summary judgment because Hurst is protected from liability by qualified immuni-

ty.[1] Viewing the evidence in a light most favorable to respondents, we conclude that the district court properly denied summary judgment.

■ State officials are entitled to qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A police officer is denied qualified immunity only where "it is obvious that no reasonably competent police officer would have concluded" that his actions were legal. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Where officers of reasonable competence would disagree on the issue, qualified immunity should apply. *Id.* at 345, 106 S.Ct. at 1098.

■ "The test for qualified immunity at the summary judgment stage is an objective one." *Johnson v. Hay,* 931 F.2d 456, 460 (8th Cir.1991). Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery. *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). In applying this standard, the evidence must be viewed in the light most favorable to the nonmoving party. *Gasparre v. City of St. Paul,* 501 N.W.2d 683, 686 (Minn.App.1993).

■ We conclude that there are genuine issues of material fact regarding appellants' claim of immunity. With respect to the first search warrant, there is a question as to

whether the concerned citizen who purchased the items told the sales clerk that he intended the items purchased to be for illegal drugs. The informant testified that he did not have "an independent recollection" as to whether he asked to purchase a "one-hitter" or "pot pipe." Respondents assert that the term "one-hitter" is not necessarily associated with illegal drugs.

With respect to the second search warrant, there is a genuine issue as to whether Hurst was aware of the identities of the employees involved in the sales prior to applying for the second search warrant. Respondents claim that Hurst's testimony at the evidentiary hearing indicates that he had identified all of the females involved in the sales prior to his application for the second search warrant. We cannot agree. Hurst's testimony is inconclusive as to when he discovered the identities of those involved in the sales.[2]

■ Appellants assert that even without the disputed facts, both challenged search warrants are supported by probable cause. We disagree.

■ A search warrant may be held void and the fruits of the search excluded from evidence if it is demonstrated by a preponderance of the evidence that the affiant, knowingly or with reckless disregard for the truth, included a false statement in the affidavit. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). If the material that is not false is sufficient to sustain the search warrant, however, the search warrant is not voided. *Id.* at 171–72, 98 S.Ct. at 2684–85.

1. In their argument, appellants apply the test for official immunity rather than that for qualified immunity; that is, they claim that the record does not support a conclusion that Hurst knowingly used false information in the search warrant application. *See Elwood v. Rice County,* 423 N.W.2d 671, 677 (Minn.1988) (a public official is not personally liable for acts which call for the exercise of his judgment or discretion unless he is guilty of a willful or malicious wrong). Appellants originally moved for summary judgment on the grounds of either qualified or official immunity. The district court refused to grant summary judgment but failed to specify the basis for the denial. In their appellate brief, appellants state "the legal issue was the availability of quali-

fied immunity." We therefore conclude that analysis of qualified immunity is appropriate.

2. At the September 19, 1994, evidentiary hearing, Hurst testified that he applied for the second search warrant because he had failed to identify the March 22 salesperson, whom Hurst thought was male. Hurst testified that he had already identified Phoebe Ring and Anna Devich as being involved in the sales. In his deposition taken in November 1994, Hurst initially stated that the informant told him prior to August 4 that Phoebe Ring was involved in the first two sales; Hurst then stated that the informant did not give him that information until later.

We conclude that without the disputed facts, there is insufficient material in either search warrant to support probable cause.

**The City's Liability**

In their complaint, respondents allege that Hurst and the other officers were acting under the official policy and direction of the City toward the purpose of harassment and interference with respondents' rights. Appellants argue that respondents have failed to present any evidence that would subject the City to liability. On appeal, respondents assert that there is a genuine issue of material fact as to whether the City has shown a conscious indifference to the rights of the citizens by failing to train its police officers properly and by implementing a policy of harassment toward respondents.

■ A municipality may, in certain circumstances, be held liable under 42 U.S.C. § 1983 for its failure to train its employees. *City of Canton v. Harris,* 489 U.S. 378, 380, 109 S.Ct. 1197, 1200, 103 L.Ed.2d 412 (1989). The Court stated:

> [T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.

*Id.* at 388, 109 S.Ct. at 1204. Only where the municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be characterized as a city "policy or custom" actionable under section 1983. *Id.* at 389, 109 S.Ct. at 1205. The failure to train must be a "policy" as the Court has defined that term and reflect a "deliberate" or "conscious" choice in order for a municipality to be liable. *Id.* Under the law, the complainant must show that the injury would have been avoided "had the [enforcement officer] been trained under a program that was not deficient in the identified respect[.]" *Id.* at 391, 109 S.Ct. at 1205–06.

This court has held that absent evidence of unconstitutional custom, practice, or policy, a county could not be liable under section 1983 for a police shooting on the grounds that the county failed properly to train and supervise

the officer. *Maras v. City of Brainerd,* 502 N.W.2d 69, 76 (Minn.App.1993), *review denied* (Minn. Aug. 16, 1993).

■ Appellants argue that they produced evidence that each of the officers involved in this investigation met the training requirements to maintain licensure as a peace officer as required by Minn.Stat. § 626.841, citing Hurst's affidavit. Appellants argue that respondents failed to cite any law requiring the City to train an informant and failed to produce any evidence to create a factual issue as to the adequacy of instructions Hurst provided the informant. Respondents assert that Hurst received no special training regarding the elements necessary to prove a charge of sale of drug paraphernalia, noting that Hurst believed using the term "one-hitter" satisfied the requirements for a statutory violation. Respondents also allege that the City failed to instruct its officers in the selection, training, and supervision of confidential informants.

We conclude that the issue of the City's liability under 42 U.S.C. § 1983 for failure to train its employees is one for the trier of fact.

**DECISION**

The district court properly denied appellants' motion for summary judgment.

**Affirmed.**