EDINA EDUCATION ASSOCIATION,
et al., Respondents,

v.

BOARD OF EDUCATION OF INDEPEN-
DENT SCHOOL DISTRICT NO. 273
(EDINA), et al., Appellants.

No. C8–96–1900.

Court of Appeals of Minnesota.

April 15, 1997.

Review Denied June 11, 1997.

 

Frank Vogl, Sara Crippen Madison, Best & Flanagan, Minneapolis, for Respondents.

Timothy J. Pawlenty, Michael J. McGuire, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, for Appellants.

Considered and decided by HUSPENI, P.J., and PARKER, and SCHUMACHER, JJ.

## OPINION

PARKER, Judge.

Independent School District # 273 moved for summary judgment based on statutory immunity and lack of subject matter jurisdiction and moved to dismiss respondent's claims under the Data Practices Act. The district court denied the motion, ruled sua sponte that the school district violated the Data Practices Act, and enjoined the school district from using any information obtained in violation of the Act. We affirm the denial of summary judgment on the basis of statutory immunity and subject matter jurisdiction and reverse the order finding that the school district violated the Data Practices Act and barring its use of certain government data in its case in chief. We affirm in part, reverse and vacate in part, and remand.

## FACTS

Appellant Independent School District No. 273, Edina, employed respondent Barbara Gentling as a school psychologist during the 1991–92, 1992–93, and 1993–94 school years. Gentling's contract was not renewed for the 1994–95 school year and, as a result, she was denied tenure. Gentling was on the tenure track until a January 1994 incident.

Michelle Gayle, the parent of T.G., a recently enrolled first-grader, requested that her daughter be screened for special education services. T.G.'s teacher was concerned about the child's reading readiness and suggested returning her to kindergarten; Gayle strongly resisted the teacher's suggestion and instead requested special education services. Gentling's supervisor, the school principal, and T.G.'s teacher asked Gentling to contact Gayle about T.G.'s assessment and "smooth things over."

Gentling telephoned Gayle on January 10, 1994. During this conversation, Gentling learned that T.G. was biracial. As part of her conversation about expectations for first grade, T.G.'s problem-solving skills, and how to better prepare the child for reading, Gentling mentioned research regarding different learning styles of some minority groups. Gentling also referenced the "Black Academy"[1] and its teaching approach and recommended several books dealing with learning styles. Gentling concluded by telling Gayle that the child-study team would assess her daughter.

Gentling again telephoned Gayle on January 21, 1994, to follow up and inform her that the assessment had not yet been completed. During that conversation, Gayle was hostile and told Gentling that her reference to the "Black Academy" and her discussion of learning styles was racist. Gayle filed a charge of discrimination with the Minnesota Department of Human Rights and a complaint with the Minnesota Department of Education, alleging that the school district wrongfully failed to provide special education services to T.G.

The Department of Education notified the school district of the complaint on February 4, 1994. Marcia Carthaus, the director of special education and one of Gentling's supervisors, asked her to prepare a summary of the school district's involvement with Gayle. Gentling consulted with T.G.'s teacher and others involved and prepared a "Log of Interactions," dated Feb. 3, 1994,[2] that the school district forwarded to an investigator for the Department of Education.

The school district was notified on March 3, 1994, of the charge filed against it with the Department of Human Rights and subsequently contacted Paul Ratwik, an attorney who had previously represented the school district, to conduct an investigation. Gentling met with Ratwik on March 22, 1994, and provided a copy of her log. She and Ratwik went over the log and discussed the district's

procedures for responding to concerns about a student's progress. Ratwik and Gentling met again on March 30, 1994, because Ratwik needed some clarifications.

Ratwik discussed his investigation and the school district's responses with the district superintendent. At the conclusion of Ratwik's investigation, the superintendent determined that a letter of deficiency should be addressed to Gentling about some of her responses and communications. The superintendent gave Gentling the letter of deficiency, dated April 6, 1994. In response to the letter, the Edina Education Association (EEA) filed a grievance on behalf of Gentling. The notice of grievance was dated April 28, 1994.

In mid-February 1994, Penny Kodrich, assistant director of special education and one of Gentling's supervisors, had told Gentling that she planned to recommend her for tenure. At that time Kodrich was aware of the Gayle incident and the complaint to the Department of Education, but not of the complaint to the Human Rights Department. On March 14, 1994, Gentling received her annual performance review from Kodrich and the principal of one of her assigned schools. This review, like her previous two, was generally positive, indicating that she met or exceeded expectations in all areas except for one concern expressed about her communication with other staff. The evaluators did not address the Gayle incident. On April 18, 1994, the superintendent sent a memo to Carthaus asking for her recommendation on Gentling's continued employment. On April 25, 1994, Carthaus recommended that Gentling be retained and given tenure. By May 9, 1994, Kodrich understood that Gentling might not be given tenure. In a memo dated May 17, 1994, to her supervisor and the superintendent, Kodrich withdrew her recommendation that Gentling be given tenure. Apparently, Carthaus also changed her mind because in a May 19, 1994, memo recom-

---

1. The actual name of the program was the Afro-Centric Education Academy. At one time it was called the Black Academy, but the name was changed. It is not clear when the name was changed.

2. The log was prepared to respond to the Department of Education complaint. It is not clear why the February 3 date on the log predates the February 4 letter from the Department of Education to the district superintendent.

mending Gentling's termination, the superintendent stated that Carthaus and Kodrich also recommended termination. The district school board approved Gentling's termination on May 27, 1994, four days before the June 1 deadline for notifying probationary staff of non-renewal for the following year.

Gentling pursued her grievance of the letter of deficiency through an arbitration hearing, on December 2, 1994. The arbitrator found in favor of the school district, stating:

[T]he record demonstrates that the April 6, 1994, warning letter does not contain false, misleading or inaccurate statements. The warning letter correctly cited the Grievant's failure to effectively communicate with the parent by leaving the impression that students of different races learn differently and by using the incorrect name for the "Black Academy." The School District directed the Grievant in the future to be clear in her communications with parents, accurate in her information furnished to parents, and be sensitive to minorities. Clearly, the School District has the authority to set a standard of clear and effective communication with parents. Without a doubt the School District has the authority to articulate the standard of performance and directives as recognized under the [Collective Bargaining Agreement.] * * * As a result, the warning letter was issued to the Grievant for just cause in accordance with * * * the Contract.

Gentling and the Edina Education Association (EEA) brought suit in district court, claiming that the timing of the district's "turnabout" in its tenure decision established that her termination was in retaliation for her grievance and that retaliation constituted an unfair labor practice under the Public Employees Labor Relations Act (PELRA), Minn.Stat. § 179A.13. Gentling also claimed damages by the district's violation of the Data Practices Act.

The school district moved for summary judgment, claiming that the district court lacked subject matter jurisdiction because Gentling had not exhausted her remedies under the collective bargaining agreement and, alternatively, claiming that statutory im-

munity protected its termination decision. The school district also moved for summary judgment on Gentling's Data Practices claims. The district court denied the school district's motion for summary judgment and ruled that the district violated the Data Practices Act. The court enjoined the district from using in its case in chief any data obtained in violation of the Act.

## ISSUES

I. Did the district court have subject matter jurisdiction to consider Gentling's unfair labor practice charge?

II. Does statutory immunity apply to the school district's failure to renew Gentling's contract?

III. Did the district court misapply the Data Practices Act by ruling that the school district could not use, in its case in chief, any information it obtained from Gentling because it failed to give her a "Tennessen" warning?

## ANALYSIS

 The district court's denial of summary judgment is appealable because the school district based its motion on statutory immunity and lack of subject matter jurisdiction. *See McGowan v. Our Savior's Lutheran Church,* 527 N.W.2d 830, 832–33 (Minn. 1995) (denial of summary judgment based on lack of jurisdiction is appealable); *McGovern v. City of Minneapolis,* 475 N.W.2d 71, 72 (Minn.1991) (denial of summary judgment based on government's claim of statutory immunity is appealable). Such an appeal focuses this court's inquiry on the legal questions of immunity and jurisdiction raised by the motion, and we presume the facts alleged by the nonmoving party are true. *See Electric Fetus Co. v. City of Duluth,* 547 N.W.2d 448, 451 (Minn.App.1996) (reviewing denial of summary judgment based on claim of immunity), *review denied* (Minn. Aug. 6, 1996); *accord Carter v. Cole,* 526 N.W.2d 209, 214 (Minn.App.1995) (appellate court has no jurisdiction for interlocutory review of denial of summary judgment based on factual issue), *aff'd Carter v. Cole,* 539 N.W.2d 241, 241 (Minn.1995) (relying on *Johnson v. Jones,*

515 U.S. 304, ——, 115 S.Ct. 2151, 2159, 132 L.Ed.2d 238 (1995), which held that defendant entitled to invoke immunity defense may not appeal denial of summary judgment based on district court's determination that record establishes genuine issue of fact); *e.g., Janklow v. Minnesota Bd. of Exam'rs for Nursing Home Adm'rs,* 552 N.W.2d 711, 713, 717 (Minn.1996) (where nonmoving party established prima facie violation of Whistleblower Act, court decided legal issue of whether Whistleblower statute impliedly preempted statutory immunity). A reviewing court need not defer to a district court's determination of legal questions. *State Farm Ins. Co. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992).

## I.

■ The school district argues that the district court lacked subject matter jurisdiction to consider Gentling's unfair labor practice claim because she did not utilize the arbitration procedure established by her collective bargaining agreement (CBA). The district court ruled, and all parties agree, that Gentling's claim of retaliatory discharge was arbitrable under her CBA. Generally, an employee must exhaust all administrative remedies provided under a CBA before bringing an action *derived from the contract* in district court. *See Rowan v. K. W. McKee, Inc.,* 262 Minn. 366, 114 N.W.2d 692, 697 (1962) (plaintiff must exhaust CBA grievance procedure before bringing claim for wrongful discharge).

■ Despite her ability to seek arbitration, we conclude that the district court correctly ruled that it had jurisdiction of Gentling's cause of action under state law.

> Any employee * * * aggrieved by an unfair labor practice as defined in this section may bring an action * * * in the district court of the county in which the practice is alleged to have occurred.

Minn.Stat. § 179A.13, subd. 1 (1994). Discharging an employee because the employee filed a grievance is prohibited as an unfair labor practice. *See* Minn.Stat. §§ 179A.13, subd. 2; 179A.06 (1994). While this CBA provided a concurrent grievance procedure, Gentling was not required to exhaust that remedy under the general rule because her cause of action did not derive solely from the contract but also derived from state law. Accordingly, the school district's reliance on *Paoletti v. Northwestern Bell Telephone,* 370 N.W.2d 672 (Minn.App.1985) *review denied* (Minn. Sept. 26, 1985), is misplaced. *Compare id.* at 675 (where employee's wrongful discharge claim derived solely from CBA and employee had exhausted contractual remedies, district court had jurisdiction to consider same claim only if employee could first establish that union breached its duty of fair representation in handling the grievance). We also agree with the district court that, after two years of litigation, this employer had waived any right it had to compel arbitration. *See Rowan,* 114 N.W.2d at 698 (employer can waive right to insist upon proceeding under CBA); *Anderson v. Twin City Rapid Transit Co.,* 250 Minn. 167, 183–84, 84 N.W.2d 593, 604 (1957) (affirming denial of summary judgment where moving party claimed employees had not exhausted their contractual remedies, but record disclosed fact question whether employer waived right to plead exhaustion of remedies).

## II.

■ The district court correctly ruled that statutory immunity did not protect the school district's decision to terminate where the facts suggested its decision had a retaliatory purpose. Statutory immunity protects certain discretionary government actions from liability. *See* Minn.Stat. § 466.03, subd. 5 (1994). While a decision to terminate an employee is almost always discretionary, statutory immunity does not protect a public employer's termination that violates a statute prohibiting retaliatory discharges. In *Janklow,* 552 N.W.2d at 718, the supreme court held that passage of the Whistleblower Act impliedly waived statutory immunity protection for government conduct that violates the Act. The court found waiver because the legislature explicitly included the state within the Whistleblower Act's reach. *Id.* Likewise, the passage of PELRA impliedly waived the government's immunity for conduct prohibited by that Act. The legislature enacted PELRA, in part, to protect public

employees from unfair labor practices. *See* Minn.Stat. §§ 179A.01; 179A.06; 179A.13, subd. 2 (1994). Moreover, PELRA is specifically directed at public employers, the same entities covered by statutory immunity. *See* Minn.Stat. § 179A.03, subd. (14), (15) (1994).

When viewing the record in favor of the employee, Gentling established a fact issue on the causal connection between her termination and the filing of a grievance, suggesting retaliatory discharge. This genuine issue of material fact precludes the district's reliance on statutory immunity. If Gentling can establish that the school district discharged her in retaliation for her protected union activity, the district's conduct would violate Minn.Stat. § 179A.13 and would not be protected by statutory immunity. *Id.; see also Davis v. Hennepin County,* 559 N.W.2d 117, 121 (Minn.App.1997) (Human Rights Act impliedly waived statutory immunity for claims against the government arising under that Act).

### III.

■ Gentling argues that the district court's order prohibiting the school district from using in its case in chief any data obtained in violation of the Data Practices Act is not appealable because it is merely a pretrial evidentiary ruling. Although the district court's injunction has the same effect as a pretrial evidentiary ruling, the court ordered that the school district was "enjoined" from using the data. The Data Practices Act allows for injunctive relief, and Gentling requested injunctive relief in her complaint. *See* Minn.Stat. § 13.08, subd. 2 (1994). Accordingly, the district court's order is an injunction and is appealable under Minn.R.Civ.App.P. 103.03.

■ The district court ordered the injunction based on its construction of the Data Practices Act; our review of this issue is de novo. *Homart Dev. Co. v. County of Hennepin,* 538 N.W.2d 907, 911 (Minn.1995) (interpretation of statute is question of law subject to de novo review). The district court ruled that the school district violated the "Tennessen" warning requirement of the Data Practices Act, which provides:

An individual asked to supply private or confidential data concerning the individual shall be informed of: (a) the purpose and intended use of the requested data within the collecting state agency, political subdivision, or statewide system; (b) whether the individual may refuse or is legally required to supply the requested data; (c) any known consequence arising from supplying or refusing to supply private or confidential data; and (d) the identity of other persons or entities authorized by state or federal law to receive the data.

Minn.Stat. § 13.04, subd. 2 (1994).

■ We conclude that the circumstances of this investigation did not require a Tennessen warning. At the time the school district interviewed Gentling, it was not attempting to collect private or confidential information about her. Instead, it was attempting to gather factual information about an incident within the course and scope of her employment. As such, the data may have been government data, but it was not data on an employee as an individual.

Minn.Stat. § 13.02, subd. 5 (1996), defines "data on individuals" as

government data in which any individual is or can be identified as the subject of that data, unless the appearance of the name or other identifying data can be clearly demonstrated to be only incidental to the data and the data are not accessed by the name or other identifying data of any individual.

The log assembled by Gentling and the statements concerning the January 1994 incident might be "data on individuals" as applied to Gayle and T.G., but Gentling was not the subject of the data. To the degree that the data identified Gentling, it was incidental to the factual focus of the inquiry. *See* Minn. Stat. § 13.02, subd. 5 (incidental identification of individuals within data does not make it "data on individuals"). Because the school district was not attempting to obtain private or confidential information concerning Gentling, the statute did not require a Tennessen warning. *See* Minn.Stat. § 13.04, subd. 2

(warning required only when asking to supply private or confidential data).[3]

The fact that the school district later used some of the data to support a letter of deficiency did not change this result; the data became public as personnel data used to document a disciplinary action. *See* Minn. Stat. § 13.43, subd. 2 (1994) (public employee disciplinary information is public data); *accord Minneapolis Fed'n of Teachers v. Minneapolis Public Schs.*, 512 N.W.2d 107, 111 (Minn.App.1994) (despite employees' privacy interest in their personnel records, personnel records used to document a disciplinary action are public under section 13.43), *review denied* (Minn. Mar. 31, 1994).

## DECISION

The district court did not err by denying the school district's motion for summary judgment based on statutory immunity and lack of subject matter jurisdiction. The district court misapplied the Data Practices Act, and its ruling that the district violated Minn. Stat. § 13.04, subd. 2, by failing to give Gentling a Tennessen warning is reversed. That part of the district court's order enjoining the district from using in its case in chief any data obtained in violation of the Data Practices Act is vacated.

**Affirmed in part, reversed and vacated in part, and remanded.**

---

3. The district court relied on Department of Administration Opinion 95–028, where the Commissioner ruled that a Tennessen warning was required in a public employment context. A University of Minnesota employee was accused of performing other services for pay during her regular work hours, and the employer's internal audit focused on the misconduct of the employee at the time she was interviewed. The Commissioner ruled that a Tennessen warning was required because, at the time of the interview, the auditors were collecting private investigative data in which she was the subject, under Minn. Stat. §§ 13.04 and 13.794, subd. 1. The Commissioner's opinion does not apply in this context. The school district interviewed Gentling to obtain information about the T.G. incident. Gentling's identification was incidental to the inquiry.