ROSS, Judge
A city began two employment investigations into a police sergeant's conduct and placed him on administrative, home-bound leave soon after the sergeant filed a union grievance challenging the city's failure to compensate him for overtime work. The leave lasted nine months-seven months longer than the city took to complete its investigations and issue a five-day suspension for one allegation and exonerate the sergeant as to the other. The sergeant sued the city under the Minnesota Whistleblower Act, alleging that the city's actions-beginning the investigations, placing him on leave, issuing a poor performance evaluation and coaching directive after the leave, and reassigning *320 him to an unfavorable position-were designed to penalize him for filing his grievance. The district court entered summary judgment in the city's favor, holding that most of the city's conduct was not covered by the act and the sergeant identified no evidence showing that the city's reason for investigating him and placing him on leave was a pretext to veil a retaliatory motive. We reverse because evidence showing that the city maintained the administrative, home-bound leave for a period so long and so inconsistent with its purported reason for commencing the leave creates a material fact dispute as to whether the city's actions "penalized" the sergeant under the Minnesota Whistleblower Act and whether the city's reason is pretextual.
FACTS
Steven Moore, a 29-year veteran of New Brighton's police department, sued the city alleging retaliation under the Minnesota Whistleblower Act, and the district court granted the city's motion for summary judgment. Except where specified otherwise, the following facts are either not in dispute or are construed in favor of Moore as the nonmoving party.
Moore served 21 of his 29 years on the police department as a patrol sergeant. That role required him to supervise officers. Certain allegations about his supervisory service precipitated the events leading to this lawsuit.
In March 2015, the city required all police employees to attend training. Employees attended the training outside their ordinary schedules, but the city did not pay them overtime for attending. Moore filed a grievance asserting that the city's nonpayment of overtime violated its collective-bargaining agreement with the officers' union. Other officers joined Moore's grievance. The police department's deputy director denied Moore's grievance, and Moore administratively appealed that decision. The city eventually agreed to pay all employees overtime for the training.
In early April 2015, within a month after Moore filed his grievance, the department launched an investigation into his alleged improper conduct, followed the next month by another investigation. In the first investigation, the city alleged that Moore had improperly approved a subordinate officer's unscheduled work hours that same month, shortly after Moore filed his grievance. In the second, Moore's supervisor alleged that Moore had fraudulently called in sick based on the supervisor's seeing Moore at a music concert the same evening after he called in. The city placed Moore on administrative paid leave from work on June 3, 2015, pending the investigations. The city ordered Moore to remain in his house during the leave from 8:00 in the morning until 4:00 every afternoon, Monday through Friday. And during the entire period, the city prohibited him from discussing either investigation with anyone.
The city took two months to complete both investigations, finding Moore at fault only in one of them. On July 31, 2015, it informed Moore that his approving of his subordinate officer's unscheduled work hours constituted a departmental violation for which Moore had to serve a five-day unpaid suspension. But the city had learned in its investigation into Moore's alleged sick-time fraud that he had done no wrong; Moore's attendance at the concert did not indicate any fraud because the medical issue for which he had requested time off from duty was a physical injury that would prevent him from serving on patrol but not prevent him from attending a concert. The city never informed Moore, however, that it had exonerated him or even that it had completed the investigation.
*321 Instead, despite having finished both investigations and having issued a suspension for one allegation and imposed no discipline for the other, the city kept Moore on the home-bound leave away from his job for another seven months.
After the city finally returned Moore to work after nine months of leave, in March 2016 it ordered him back to work in a different assignment. The city directed him to serve a desk job as an administrative sergeant managing cars and equipment rather than serving as a patrol sergeant managing officers. It also issued Moore a performance evaluation for the previous year. In contrast to all his previous evaluations, Moore's 2015 evaluation asserted that every aspect of Moore's performance was unacceptable, needing improvement, and the city required him to be placed on a "counseling and guidance" remedial plan. On October 12, 2016, six months after he served his suspension, the city reduced the suspension to a written reprimand, repaying him for the pay deduction. Moore performed the duties of administrative sergeant largely without incident for a year and a half, but not without tension. Finally in June 2017, his supervisor issued Moore an oral reprimand for insubordination.
Soon after that reprimand, Moore brought this suit alleging violations of the Minnesota Whistleblower Act. He asserted specifically that the city's post-grievance conduct-commencing the investigations, placing him on leave for nine months, removing him from patrol and reassigning him to an administrative position, issuing a negative performance evaluation, and placing him on a counseling and coaching plan-constituted retaliation against him as a penalty for his having filed the union grievance.
The city moved for summary judgment, and the district court granted the motion. It held that Moore failed to present a prima facie case of retaliation as to some of the city's alleged conduct under the Minnesota Whistleblower Act because those acts did not constitute adverse employment activity, and as to the conduct that the district court held to qualify as adverse actions, it concluded that Moore failed to show that the city's proffered, nonretaliatory justification was a pretext for retaliation.
Moore appeals the district court's summary-judgment decision, and the city cross-appeals, questioning the district court's and this court's subject-matter jurisdiction over the case and otherwise defending the summary-judgment decision on rationale rejected by the district court.
ISSUES
1. Did the district court err by exercising subject-matter jurisdiction over Moore's retaliation claim under the Minnesota Whistleblower Act?
2. Did the district court err by granting the City of New Brighton's motion for summary judgment?
ANALYSIS
Moore appeals from the district court's grant of the City of New Brighton's summary-judgment motion on his whistleblower claim. The city cross-appeals, arguing that the district court should not have considered the claim at all because it lacked subject-matter jurisdiction and that the district court could have based summary judgment on alternative rationale. We begin with the jurisdictional question.
I
The city argues that the district court erred by exercising subject-matter jurisdiction over Moore's claim under the Minnesota Whistleblower Act. We review *322 the district court's exercise of subject-matter jurisdiction de novo. Nelson v. Schlener , 859 N.W.2d 288, 291 (Minn. 2015). The district court carefully analyzed the city's jurisdictional theory and rejected it. We also reject it.
The city maintains that Moore's whistleblower claim really arises from his implied premise that the city breached the collective-bargaining agreement with Moore's union and that this obligated Moore to bring his claim under the Public Employment Labor Relations Act (PELRA) or be bound by PELRA's filing prerequisites. See Minn. Stat. § 179A.01 -.25 (2018). Because the filing of a civil complaint under PELRA requires a claimant to have first exhausted his administrative remedies-remedies that Moore did not seek-the city argues that the district court lacked jurisdiction to hear Moore's whistleblower-disguised PELRA claim. See Edina Educ. Ass'n v. Bd. of Educ. of Indep. Sch. Dist. No. 273 , 562 N.W.2d 306, 310 (Minn. App. 1997) (observing that the general rule that an employee must exhaust collective-bargaining remedies before bringing an action on the contract may apply to a PELRA claim), review denied (Minn. June 11, 1997).
The city asserts specifically, "Because Appellant argues the City retaliated against him for filing a union grievance that alleged only a violation of the [agreement], his exclusive remedy is provided by PELRA." The city identifies no language in PELRA, the Minnesota Whistleblower Act, or its collective-bargaining agreement with Moore's union that suggests that Moore was obligated to exhaust any administrative remedies before availing himself of the remedies afforded to employees under the Minnesota Whistleblower Act. Instead, citing Edina Education Association , the city insists specifically that, "[i]f an employee believes an employer has retaliated against him [or] her for filing a union grievance, the employee has [only] two potential remedies," which are filing an unfair-labor-practice complaint in the district court or pursuing a grievance arbitration under the collective-bargaining agreement. The city errs.
The Edina Education Association decision plainly refutes rather than supports the city's jurisdictional argument. In that appeal, the respondent governmental employer, like the city here, argued that the district court improperly exercised subject-matter jurisdiction to consider an employee's retaliation claim because the claim arose from conduct that violated the labor contract and therefore could have been resolved through the administrative remedies provided under the contract. 562 N.W.2d at 310. We rejected the argument. We explained that, although the labor contract "provided a concurrent grievance procedure, [the employee] was not required to exhaust that remedy ... because her cause of action did not derive solely from the contract but also derived from state law," which in that case was PELRA. Id.
In this case, the Minnesota Whistleblower Act is the state law from which Moore's lawsuit derives. And the inclusive language of that act mirrors the Edina Education Association concurrent-remedy rationale and undermines the city's contention: "In addition to any remedies otherwise provided by law, an employee injured by a violation of section 181.932 may bring a civil action to recover any and all damages recoverable at law ...." Minn. Stat. § 181.935(a) (2018) (emphasis added). Although the collective-bargaining agreement provided a remedy for Moore's overtime grievance, it is a remedy that is, at most, a remedy concurrent with the statutory remedy afforded to employees. The district court properly exercised subject-matter *323 jurisdiction over Moore's whistleblower claim.
II
Moore argues that the district court should have denied the city's motion for summary judgment. The city argues that the district court properly granted the motion and that it could have decided it on alternative grounds by holding that none of the city's conduct can be considered under the Minnesota Whistleblower Act because none of it constituted an adverse employment action. We review a district court's summary-judgment decision de novo, determining whether any genuine issues of material fact exist and whether the district court erred in applying the law. Montemayor v. Sebright Prods., Inc. , 898 N.W.2d 623, 628 (Minn. 2017). In doing so, we consider the undisputed facts along with any disputed facts as construed in the light most favorable to the party against whom summary judgment was granted. Star Ctrs., Inc. v. Faegre & Benson, L.L.P. , 644 N.W.2d 72, 76-77 (Minn. 2002).
The United States Supreme Court established in McDonnell Douglas Corp. v. Green , 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), the now customary burden-shifting analysis that Minnesota courts have adopted and applied at summary judgment in employer-retaliation claims under various statutes. See Hubbard v. United Press Int'l, Inc. , 330 N.W.2d 428, 444 (Minn. 1983) (applying McDonnell Douglas test in review of summary-judgment decision in retaliatory-discharge claim under the Minnesota Human Rights Act); Grundtner v. Univ. of Minn. , 730 N.W.2d 323, 329 (Minn. App. 2007) (applying McDonnell Douglas test in review of summary-judgment decision in retaliatory-discharge claim under the Minnesota Whistleblower Act), review denied (Minn. July 17, 2007); cf. Cokley v. City of Otsego , 623 N.W.2d 625, 630 (Minn. App. 2001) (applying McDonnell Douglas test to employer's posttrial motion for judgment notwithstanding the verdict in retaliatory-discharge trial under the Minnesota Whistleblower Act), review denied (Minn. May 15, 2001). We will apply the McDonnell Douglas test here to determine the appropriateness of summary judgment on Moore's retaliatory-penalization claim.
To prevail on his claim under the Minnesota Whistleblower Act, Moore must prove that the city "discharge[d], discipline[d], threaten[ed], otherwise discriminate[d] against, or penalize[d]" him regarding his "compensation, terms, conditions, location, or privileges of employment because" Moore, "in good faith, report[ed] a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official." Minn. Stat. § 181.932, subd. 1(1) (2018). We incorporate these statutory elements into the burden-shifting test.
The question of whether a retaliation claim can survive summary judgment under the McDonnell Douglas burden-shifting test begins with the employee's need to present a three-element prima facie case: "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." Hubbard , 330 N.W.2d at 444. If the employee fails to meet any of these elements, summary judgment in the employer's favor is appropriate. See Lubbers v. Anderson , 539 N.W.2d 398, 401 (Minn. 1995) ("A defendant is entitled to summary judgment as a matter of law when the record reflects a complete lack of proof on an essential element of the plaintiff's claim."). But if the employee presents evidence establishing a prima facie case, the burden then shifts to *324 the employer, whose summary-judgment motion should fail unless it provides a legitimate, nonretaliatory reason for its challenged adverse employment action. Hubbard , 330 N.W.2d at 445. If the employer meets this challenge, the burden shifts back to the employee, who can then avoid summary judgment only by producing evidence that would allow a reasonable trier of fact to find that the employer's stated reason for the allegedly adverse action was more likely than not merely a pretext for retaliation. Hoover v. Norwest Private Mortg. Banking , 632 N.W.2d 534, 542 (Minn. 2001). We apply this burden-shifting test here in the context of the whistleblower statute.
A. Statutorily Protected Conduct
The city challenges the district court's holding that Moore engaged in statutorily-protected conduct by filing his grievance. Whether Moore is entitled to the protection of the statute is a question of law we review de novo. See Wayzata Nissan, LLC v. Nissan N. Am., Inc. , 875 N.W.2d 279, 284 (Minn. 2016). When interpreting a statute, we give effect to its plain, unambiguous language. Id. at 285. The conduct protected from employer retaliation under the statute is the good-faith report of a suspected violation "of any federal or state law or common law or rule adopted pursuant to law to an employer." Minn. Stat. § 181.932, subd. 1(1). The city contends that Moore's grievance asserting that the city breached its contract with its employees by failing to pay overtime was an assertion of neither a violation of any state law nor a violation of the common law. The contention fails.
Moore's whistleblower claim rests on alleged employer retaliation against him for his having filed a union grievance, a grievance that accused the city of violating its contractual duty to make overtime payments. Moore's grievance was, in essence, therefore a breach-of-contract allegation. See Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co. , 848 N.W.2d 539, 543 (Minn. 2014) ("A breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of the contract."). The city suggests that Moore's objection to a breach of contract is distinct from an objection to "any federal or state law or common law or rule" under the whistleblower statute. It would have us hold that "the term 'contract' is not interchangeable with the term 'common law' in the [whistleblower] statute," citing our unpublished decision in Phillips v. State , No. C1-99-604, 1999 WL 759987, *3-4 (Minn. App. 1999). Not only is Phillips nonprecedential as an unpublished opinion, see Minn. Stat. § 480A.08, subd. 3 (2018), it also does not stand for the city's asserted proposition. The Phillips court answered only whether a report of a contract violation constituted a report of a violation of a law or rule; it never purported to distinguish a contract violation from a common-law violation because the statute at the time did not protect reports of violations of the common law. Id. The statute is no longer limited to protecting reported violations of laws and rules. The legislature amended the statute in 2013 to add reports of "common law" violations to the class of reports protected by the Whistleblower Act. 2013 Minn. Laws ch. 83, § 4, at 469; Compare Minn. Stat. § 181.932, subd. 1(1) (2014), with Minn. Stat. § 181.932, subd. 1(1) (2012). The discussion in Phillips is inapposite.
The city does acknowledge that breach of contract is a cause of action recognized by common law. But it reasons that "[i]f the ... [l]egislature wanted the [Minnesota Whistleblower Act] to apply to reports of violations of contract, it could have easily stated that in the statute." We *325 think it did state so in the statute by including reports of common-law violations, because contract breaches violate the common law just as acts of battery or trespass or negligence violate the common law. See Caldas v. Affordable Granite & Stone, Inc. , 820 N.W.2d 826, 835 n.2 (Minn. 2012) ("We rest our conclusion on the ground that appellants' common law breach of contract claim fails because they have not established they are intended third-party beneficiaries of the contract." (emphasis added)); see also Oliver Wendell Holmes, Jr., The Common Law , at 247-339 (Dover ed. Publications, Inc. 1991) (thoroughly analyzing the history, elements, voidability, and breach of contract as matters of common law). We reject the city's suggestion that Moore's complaint about the city's alleged contract violation is not a complaint of a common-law violation. The district court correctly held that Moore offered sufficient evidence to create a fact question as to whether he made a statutorily-protected report.
B. Adverse Employment Action
The district court concluded that Moore made a sufficient showing that some of the city's conduct constitutes adverse employment action, specifically, the city's commencing the investigations and placing Moore on leave for nine months. The city challenges this conclusion on appeal. The district court also concluded that Moore did not make a sufficient showing that the city's other conduct constitutes adverse employment action, specifically, the city's reassigning Moore to an administrative position, issuing him the negative performance evaluation, and placing him on a counseling and coaching plan. Moore challenges that conclusion on appeal.
Investigations and Extensive Administrative Leave
Our review of the record convinces us that the evidence presents a material fact dispute as to whether the city's investigatory and administrative-leave decisions met the adverse-action element of Moore's retaliation claim. The circumstances best fit the "penalize" provision in the whistleblower statute. Moore argues that the city's adverse action was its penalizing him in its commencing the investigations and then placing him on home-bound administrative leave for an oppressively lengthy period detached from the supposed reason for the leave. We must decide whether, as a matter of law, the investigation and assignment to administrative leave can constitute a penalty under the statute, and, if so, whether the facts construed in favor of Moore are sufficient to allow a reasonable factfinder to conclude that the city's actions were penal.
We have no difficulty concluding that, as a matter of law, an employee's assignment to administrative leave might in some circumstances constitute a penalty under the whistleblower statute. The act defines the term "penalize" to include conduct "that might dissuade a reasonable employee from making or supporting a report." Minn. Stat. § 181.931, subd. 5 (2018). This statutory definition, which the legislature adopted in 2013, see 2013 Minn. Laws ch. 83, § 2, at 469, has not been construed in any Minnesota case. But its operative terms, "might dissuade" and "reasonable employee," are plain and unambiguous, and they suggest an inclusive reach into a wide variety of unspecified employer behavior. Nothing on the face of the definition categorically excludes as actionable conduct an employer's decision to investigate an employee and remove him from active service by placing him on extensive administrative leave.
We add that federal caselaw interpreting similar statutes leads to the same conclusion. Our state supreme court has *326 recognized the substantial similarities between federal and state antidiscrimination employment laws and has therefore applied principles expressed by federal courts interpreting Title VII to retaliation claims based on Minnesota law. See Hoover , 632 N.W.2d at 542 ; Anderson v. Hunter, Keith, Marshall & Co. , 417 N.W.2d 619, 623 (Minn. 1988). Following this approach, we see that the Minnesota Whistleblower Act's definition of "penalize" closely mirrors the United States Supreme Court's language describing materially adverse conduct that can support a retaliation claim under Title VII, 42 U.S.C.A. § 2000e-3(a) : "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. v. White , 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) (quotations omitted). And multiple cases applying the Burlington Northern description of actionable retaliatory conduct under Title VII are consistent with our understanding that administrative leave might, under the right circumstances, constitute a penalty under the same definition in the Minnesota Whistleblower Act.
For example, in McCoy v. City of Shreveport , the Fifth Circuit Court of Appeals concluded, "[T]he mere fact that [the plaintiff police officer] was placed on paid administrative leave does not necessarily mean that she did not suffer an adverse employment action." 492 F.3d 551, 560 (5th Cir. 2007). The McCoy court reasoned that "placement on administrative leave may carry with it both the stigma of the suspicion of wrongdoing and possibly significant emotional distress" and that "[i]nstances of administrative leave can also negatively affect an officer's chances for future advancement." Id. at 561. The Sixth Circuit similarly decided, "The retaliatory actions alleged by Michael, including her brief placement on paid administrative leave and the 90-day performance plan, appear to meet this relatively low bar [described by Burlington Northern ]." Michael v. Caterpillar Fin. Servs. Corp. , 496 F.3d 584, 596 (6th Cir. 2007) ; see also Hinkle v. City of Wilmington , 205 F. Supp. 3d 558, 575 (D. Del. 2016) ("The court concludes that Hinkle has raised genuine issues of material fact regarding the City's motives for delaying her reinstatement, particularly for the open-ended nature of the delay. The issue of retaliation is better left to a jury."); Asia v. Res-Care Inc. , 59 F. Supp. 3d 260, 269 (D. Mass. 2014) ("In light of the Burlington Northern ... standard, the record contains considerable evidence from which a jury could infer that Plaintiff's two mandatory administrative leaves rise to the level of adverse employment action ...."). We find this reasoning construing the related federal statute persuasive and corroborative of our view that placing an employee on extended administrative leave might in some circumstances constitute penalizing conduct actionable under Minnesota's whistleblower law.
We are not led to a different conclusion by Eighth Circuit Court of Appeals cases that the city urges us to read as "clearly establish[ing] that neither investigating nor placing an employee on paid administrative leave pending an investigation are adverse employment actions." We see no such bright-line rule in the cited cases. The city bases its proposition on two federal appellate opinions. But in citing the first, Singletary v. Missouri Department of Corrections , the city ignores Singletary 's clear emphasis on the fact that, "once the investigation concluded, Singletary was promptly returned to his original position as an Investigator II." 423 F.3d 886, 891 (8th Cir. 2005). Unlike the employer *327 in Singletary , the city here neither "promptly returned" Moore to work "once the investigation concluded" nor ever "returned [him] to his original position." And in citing the second, Pulczinski v. Trinity Structural Towers, Inc. , the city ignores Pulczinski 's emphasis on the fact that the employee there had been suspended with pay for only three days and that, "[a]fter the investigation concluded, Pulczinski resumed working as a lead painter." 691 F.3d 996, 1007 (8th Cir. 2012). In other words, although the Pulczinski court declared broadly that "[p]lacement on paid administrative leave pending an investigation does not meet [the adverse-employment action] standard" under the Family Medical Leave Act, 2 U.S.C. § 2615(a)(2), it so declared only in the context of an administrative leave that was truly "pending an investigation," id. at 1008 (emphasis added), not leave that, as suggested by the facts construed in Moore's favor, dragged on long after any investigation was pending and after which the city placed him in an arguably far less favorable position. We need not decide whether leave that is truly pending an investigation can never constitute an adverse employment action. We conclude only that administrative investigatory leaves are not categorically excluded from constituting adverse employment actions under the Minnesota Whistleblower Act.
Having decided that assignment to administrative leave supposedly for an investigation can in some cases constitute a penalty under the act, we turn to answer whether the evidence construed in Moore's favor is sufficient to allow a jury to find that the city's actions were penal as a matter of fact. Obviously, yes. An employee who offers evidence showing that his employer commenced an investigation and kept him on administrative, home-bound leave for a lengthy period inconsistent with the alleged investigatory reason for placing him on leave has presented a material fact dispute as to whether the employer's actions "penalize" the employee. The evidence could convince a jury that a reasonable employee in Moore's shoes "might" be dissuaded from challenging his employer's violation of a collective-bargaining agreement if the employee anticipates that, in response to his challenge, the employer will commence an investigation and place him on leave for nine months-far longer than it takes to investigate any plausible misconduct claim-only to return the employee to a less favorable job assignment. We affirm the district court's holding that a material fact question exists as to whether Moore's being subjected to the investigation and administrative leave was dissuadingly punitive.
Reassignment, Performance Evaluation, Coaching Plan
Moore challenges the district court's conclusion that he did not make a sufficient showing that the city's other conduct (reassignment to an administrative position, issuance of the negative performance evaluation, and placement on a counseling and coaching plan) also constitutes adverse employment action.
The district court considered each of these actions independently and, in a well-reasoned analysis, concluded that none meets the adverse-action element of a retaliation claim. In this case, however, where all of the employer's allegedly retaliatory behavior might, as a matter of fact, be construed as a series of related decisions tied to the same triggering, statutorily-protected conduct, we believe that the proper approach at summary judgment is to consider how a factfinder might interpret the circumstances collectively. As the Eighth Circuit has accurately observed concerning the treatment of a retaliation claim under the Minnesota Human Rights *328 Act, Minn. Stat. § 363A.15 (2018), the "materially adverse employment action element may be met" based on the cumulative effect on the employee "if the [alleged retaliatory] acts, considered in the aggregate, would dissuade a reasonable employee" from making the protected report. Quinn v. St. Louis County , 653 F.3d 745, 751 (8th Cir. 2011) ; see also Noviello v. City of Boston , 398 F.3d 76, 94 (1st Cir. 2005) ("Taking the aggregate facts of record in the light most favorable to the plaintiff, we believe that a jury rationally could find that the plaintiff was subjected to a hostile work environment arising out of retaliation for her complaint ...."); Hicks v. Baines , 593 F.3d 159, 165 (2d Cir. 2010) ("[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." (quotation omitted)).
Our analysis above informs us that a factfinder could reasonably infer that the city's decisions to investigate Moore and place him on extended administrative leave share the same retaliatory motive as its decision to reassign him to a less active position when his leave finally ended. The same is so for the "coaching and counseling" directive and poor performance review. That these followed almost immediately after the city allowed Moore to return to work under his reassigned duties tends to support a similar inference about those decisions. The inference is especially reasonable since some evidence suggests that Moore's supervisors never considered disciplining him for alleged performance deficiencies or attitude issues in his decades of service before the grievance. So although the district court may have been correct in deeming the reassignment, performance evaluation, and coaching directive as unlikely, individually, to dissuade a reasonable employee from engaging in protected conduct, we reach a different conclusion by considering these actions as a collective with the city's investigative and leave actions. Under the circumstances, the evidence is sufficient to create a fact dispute as to the city's motives on these things.
C. Causation and Pretext
The district court's thoughtful analysis of the causation element of Moore's prima facie case is sound:
There was approximately one month between the grievance and the investigations and approximately two months between the grievance and the administrative leave. Moore makes a great deal of [public-safety director]'s dislike of grievances. In context, [public-safety director]'s testimony may not constitute direct evidence of a causal link between Moore's grievance and the retaliatory conduct, but it does provide circumstantial and inferential evidence of such a causal link. Moreover, the unique and disproportionate approach to the initiation of an internal affairs investigation in a manner which did not seem to have any precedent or comparison, and the administrative leave which left Moore hanging for months after both investigations had been concluded also create enough evidence of a causal link to avoid summary judgment on the element of causation.
The city argues that the district court was wrong in its causation assessment, maintaining that "many other police employees ... filed the same grievance ... and yet did not experience the same employment issues." Here the city identifies reasonable evidence that might weaken Moore's case for causation, but on summary judgment we do not weigh the *329 evidence. We are not deciding whether the evidence reasonably could support a finding favoring the city's position, but whether it could support a finding favoring Moore's. A jury could conclude both that retaliatory motives precipitated the city's treatment of Moore and also that others similarly situated were not similarly treated.
The city also argues that "intervening events occurred between" Moore's filing the grievance and the city's employment actions, undermining the district court's causation holding. The argument fails. The city points to Moore's coworker's complaint about Moore's treatment of overtime for subordinates and also to Moore's admission to his supervisors about his regular approach to overtime approval. These events too are facts the city might offer to persuade a factfinder about the city's true motives, highlighting a disputed fact rather than establishing that no reasonable factfinder could accept Moore's theory about causation. We affirm the district court's holding that Moore has presented sufficient evidence to avoid summary judgment on the question of causation.
The city gave its nonretaliatory reason for its investigation and leave decisions: The city learned that Moore had engaged in a pattern of approving overtime hours that was inconsistent with city policy and suspected that Moore had misused sick time, and it extended the leave for nine months "because [Moore's] union representative and the City were discussing a potential early retirement and severance package." The district court appropriately credited the city's proffer as a nonretaliatory justification for its actions. The proffer shifts the burden to Moore to show that the city's justification is really just a pretext for retaliation. The district court found Moore's showing insufficient. It reasoned, "The temporal proximity of the investigations and administrative leave to the grievance, New Brighton's heavy-handed and disproportionate approach to address Moore's violations, and its rather ham-handed decisions to keep Moore on administrative leave well after the internal affairs investigations were resolved and not to tell Moore of the resolution of the second internal affairs investigation until months after it was resolved, was enough to get Moore past the prima facie stage of the McDonnell Douglas test" but not enough to demonstrate pretext.
We reach a different conclusion for two reasons, both involving fact issues requiring credibility determinations. A plaintiff can satisfy his burden of showing pretext "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Sigurdson v. Isanti County , 386 N.W.2d 715, 720 (Minn. 1986) (quotation omitted); cf. Feges v. Perkins Rests., Inc. , 483 N.W.2d 701, 711 (Minn. 1992) ("Perkins'[s] proffered reasons for its decision to fire Feges were capable of being exposed as pretext and Feges made a valiant attempt to do so [at trial]."). The first problem with resolving the question of pretext at summary judgment is that Moore disputed the city's underlying factual premise, saying that he never told the city that he planned on retiring. The second problem is independent of the first. The city's explanation for its extraordinary, months-long extension of Moore's administrative leave is sufficiently dubious that a factfinder might well conclude that it is merely pretextual. The city does not say why its having discussions about Moore's possible retirement arrangements would render it necessary, or desirable, or even reasonable to keep Moore from returning to service during the alleged discussion period. Nor does it *330 attempt to explain how it could possibly have taken seven months to complete those discussions, even if having the discussions somehow prevented the city from returning Moore to work. And the city's representation that it was just an "oversight" not to have disclosed to Moore that the investigation had long since actually ended adds to the suspicious nature of the city's justification. Moore has met his burden to show that the city's stated reasons for the administrative leave were pretextual. Because the circumstances would allow a factfinder to infer pretext, summary judgment was not appropriate.
DECISION
The district court had subject-matter jurisdiction to hear Moore's whistleblower claim. The undisputed facts and the disputed facts construed in Moore's favor could support a finding that the city treated Moore in a manner that penalized him and would dissuade a reasonable employee from engaging in conduct protected by the Minnesota Whistleblower Act. The facts could also support a finding that the city's justification for one or more of its allegedly adverse actions was a pretext for retaliation. We therefore reverse the summary-judgment decision.
Reversed and remanded.