**STATE of Minnesota, Appellant,**

v.

**Daryl Duane ALT, Respondent.**

**No. C3-90-2651.**

Court of Appeals of Minnesota.

May 21, 1991.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Raymond F. Schmitz, Olmsted County Atty., Debra A. Jacobson, Asst. County Atty., Rochester, for appellant.

Kevin A. Lund, Patterson–Restovich–Lund Law Office, Rochester, for respondent.

Considered and decided by AMUNDSON, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

RANDALL, Judge.

The state appeals from a pretrial order suppressing evidence seized pursuant to a search warrant executed at night. We affirm.

## FACTS

Respondent Daryl Alt is charged with first-degree criminal sexual conduct, first-degree assault and attempted murder allegedly committed on the night of August 15–16, 1990. Suspicion focused on Alt, and, after consent to search was denied by Mrs. Gommels, the owner of the house where Alt lived, police applied to the county attorney's office on the afternoon of August 17 for a search warrant application.

The preparation of the search warrant and accompanying application took about four hours, with the forms not being completed until about 8 p.m. The officers testified they were concerned because it was approaching sunset, and the owner of the house had indicated they might be leaving town that night. The completed search warrant application included a statement that a nighttime search was necessary and a reason for the necessity. However, in the "Wherefore" clause that followed, the affiant requested a "daytime only" warrant. The search warrant itself did not include language authorizing a nighttime search.

When the search warrant forms and application were completed, the officers drove to the house of Judge Gowan, arriving at about 8:15 p.m. Judge Gowan read the warrant and application, and asked if they were going to execute it that evening. They told him they were. The judge signed the application and warrant. The officers did not check the warrant after it was signed to see if it authorized a nightime search. It authorized only a daytime search.

Judge Gowan's residence was located about three miles from the house. The officers returned to the law enforcement center to obtain a crime scene kit, and then proceeded to the Gommels' residence, arriv-

ing at 8:54 p.m. The state introduced an exhibit showing that the calculated time of sunset on August 17 was 7:13 p.m. The parties agree a nightime search warrant was needed because of the time at which the warrant was executed.

The search warrant authorized the search of the house as well as a pickup truck owned by the Gommels. The officers searched the truck first, and after a brief inspection, had it towed. The officers then entered the house, where the Gommels teenage daughters were in the family room watching television. One of Mrs. Gommels' daughters asked about the warrant's last paragraph, which specified a "daytime only" search. She pointed this out to the officers. One detective testified he told her it was a "nightcap" warrant and language to the contrary was only a clerical error. Mrs. Gommels testified the officer told her the "supporting documentation was at their office." The officers did not attempt to contact Judge Gowan and obtain a corrected nightime warrant. The state concedes the officers had the right to seal off the area to prevent possible destruction of evidence, recontact Judge Gowan, and petition him for another warrant authorizing a nightime search. The record is clear the officers chose to proceed with the search of the Gommels' house without exercising their option to return to Judge Gowan and repetition him for a nightime warrant.

The search of the truck turned up a towel, some semen stains, fingerprints, a Cambridge brand cigarette, some floor debris, including a hair matching the victim's, and some fiber transfer samples. The victim has told police the assailant offered her a Cambridge brand cigarette. Police seized from the house a number of items, primarily clothing which "may" match the victim's description or which she may identify. Also seized were a pair of tennis shoes whose imprint allegedly matches that left in the cornfield where the victim was physically assaulted and abandoned, and a package of Cambridge cigarettes. The victim has failed to identify Alt's photograph in a photo display.

The trial court granted Alt's motion to suppress the evidence seized pursuant to the search warrant. The state appeals.

## ISSUE

Did the trial court clearly err in suppressing evidence seized pursuant to the daytime only search warrant?

## ANALYSIS

■ In a pretrial appeal from an order suppressing evidence, the state must show that the trial court clearly erred in its judgment and that the suppression of the evidence will have a critical impact on the outcome of the prosecution. *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977).

Minn.Stat. § 626.14 (1990) provides:

A search warrant may be served only in the daytime unless the court determines on the basis of facts stated in the affidavits that a nighttime search is necessary to prevent the loss, destruction, or removal of the objects of the search. The search warrant shall state that it may be served only in the daytime unless a nighttime search is authorized.

The execution of a search warrant at night in violation of this statute may be grounds for suppression of any evidence seized. *State v. Lien*, 265 N.W.2d 833, 840 (Minn. 1978). The supreme court has noted:

The policy behind prohibiting nighttime searches in the absence of specific judicial authorization in the warrant is to protect the public from the "abrasiveness of official intrusions" during the night.

*State v. Stephenson*, 310 Minn. 229, 233, 245 N.W.2d 621, 624 (1976) (citation omitted).

The search warrant for the Gommels residence specifically authorized only daytime execution. The warrant serves as the sole authority for the search, and a copy must be given to the homeowner or occupant. *See* Minn.Stat. §§ 626.13, .16 (1990). A court does not look beyond the four corners of a clear and unambiguous document to find an intent and an authority not expressed within. Here, the prosecution ob-

tained an affidavit from the issuing judge concerning his intent, as well as a "corrected" warrant. This, and the officers' sworn testimony that Judge Gowan was told there would be nighttime execution, could be used to supplement the written warrant *application. See State v. Meizo*, 297 N.W.2d 126, 129 (Minn.1980). However, here we are not dealing with the application. Rather, we are examining the actual signed warrant. The after-the-fact recollections of the officers and Judge Gowan do not alter the plain language of the warrant itself, which did not authorize a nightime search.

■ The state urges this court to apply the "good faith" exception to the exclusionary rule which the U.S. Supreme Court adopted in *United States v. Leon*, 468 U.S. 897, 913, 104 S.Ct. 3405, 3415, 82 L.Ed.2d 677 (1984). The Minnesota Supreme Court has not incorporated the good faith exception into Minnesota law. *See State v. McCloskey*, 453 N.W.2d 700, 701 n. 1 (Minn. 1990). Moreover, the *Leon* "good faith" exception applies when officers reasonably rely on a warrant issued by a magistrate. *Leon*, 468 U.S. at 913, 104 S.Ct. at 3415. This exception applies when the warrant is valid on its face and the police act on its authorization. This warrant was not a valid nightime warrant on its face. It was a valid daytime warrant. Therefore, even if *Leon* were applicable, this is not a *Leon* fact situation. The warrant as signed authorized only a daytime search. First, the police failed to proof read it and bring to Judge Gowan's attention their request for a nightime warrant. Secondly, when the daytime only authorization was pointed out to them during the search, even though they had a right to seal the area and take the time to recontact Judge Gowan for the necessary correction, they disregarded that option and chose to proceed on the following basis: (a) the warrant was okay; (b) if it was not okay, someone would later say it was okay. Given these facts, the state's position on "good faith" is weak. The right to gamble includes the risk of losing.

It is difficult to find a trial court in clear error when it read an unambiguous doc-

ument authorizing a daytime search only as a document authorizing only a daytime search. The trial court which suppressed the evidence had before it the courageous and honest affidavit of Judge Gowan who supported the police's position that they had gone to him for a nightime warrant but that somehow a daytime only warrant had left his home. The trial court had discretion to consider that affidavit when it made its decision to suppress the seized evidence. It could have used Judge Gowan's affidavit to turn the daytime warrant into a nightime warrant and allow the evidence seized into trial. However, we are not asked to rule on an appeal by the defendant where the trial court used Judge Gowan's after-the-fact affidavit to turn the daytime only warrant into a nightime warrant.

The only issue is whether the trial court clearly erred by going on the plain words of the signed warrant and not a later filed affidavit and a "corrective warrant." With our limited scope of appellate review, we do not find clear error.

The state emphasizes the gravity of the offenses charged in this prosecution. We agree. But gravity does not affect law. The framers of the Bill of Rights foresaw that the prohibition against unreasonable searches and seizures would impede, and at times bar, the investigation of major as well as minor offenses.

Because we do not find the trial court clearly erroneous, and thus affirm the trial court's suppression of the evidence, we do not address the "critical impact" prong of a pretrial evidentiary appeal by the state.

## DECISION

The trial court did not clearly err by suppressing evidence seized at night with a daytime only warrant.

Affirmed.