STATE of Minnesota, Appellant,

v.

Amy Susan McGRATH, Respondent,

Julius Anthony Nolen, Respondent,

Laura Ann Nolen, Respondent.

Nos. A05–1021, A05–1022, A05–1023.

Court of Appeals of Minnesota.

Dec. 6, 2005.

Mike Hatch, Attorney General, St. Paul, MN, and Patrick J. Ciliberto, Scott County Attorney, Michael J. Groh, Assistant County Attorney, Shakopee, MN, for appellant.

Mark D. Nyvold, St. Paul, MN, for respondent McGrath.

Richard A. Enga, Taylor Law Firm, Minneapolis, MN, for respondent Julius Nolen.

Robert M. Paule, Minneapolis, MN, for respondent Laura Nolen.

Considered and decided by
PETERSON, Presiding Judge;
HALBROOKS, Judge; WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

Appellant State of Minnesota challenges the district court's suppression of evidence seized during a search of respondents' home. Appellant contends that the district court erred when it determined that the affiant's omission from the search-warrant affidavit of an informant's extensive criminal history and pending criminal charges, along with the affiant's characterization of the informant as a "concerned citizen," constituted reckless misrepresentations of fact that were material to the

finding of probable cause. Appellant also challenges the district court's determination that marijuana residue found in plastic bags recovered during three searches through garbage left for pickup at the curb near respondents' home failed to establish an independent basis for probable cause because it was merely evidence of the residents' personal use of marijuana. We reverse and remand for further proceedings.

## FACTS

On September 23, 2004, Sgt. Fossum of the Minneapolis Police Department conducted a custodial interview of Gary Buckner, a suspect in a series of armed robberies of local pharmacies. During the interview, Buckner admitted committing seven armed robberies in the Twin Cities area. In each robbery, Buckner sought OxyContin tablets for his personal use.

After discussing the robberies, Buckner was asked to identify associates who also were engaged in criminal activity. Among a small number of associates, Buckner implicated respondent Amy McGrath, Michael Ruprecht, and their friend "Laura" who was "one of the prosecuting attorneys in Minneapolis." Buckner characterized McGrath and Ruprecht as cocaine dealers. Buckner stated that he had seen "Laura" use cocaine on multiple occasions between December 2003 and June 2004, a period during which he was renting a room in the basement of the residence of McGrath and Ruprecht. "Laura" was later identified as respondent Laura Nolen.

Sgt. Fossum contacted Det. Skorczewski of the Scott County Sheriff's Office to conduct an investigation so as to avoid a conflict of interest for police officers who had worked with Laura Nolen and her husband, respondent Julius Nolen, who was an Assistant Hennepin County Attorney. On September 27, 2004, Det. Skorczewski interviewed Buckner. This interview fo-

cused primarily on the drug-dealing activities of McGrath and Ruprecht. Buckner stated that he had witnessed Laura Nolen using cocaine six to eight times over the six-month period when he lived at the McGrath–Ruprecht residence. Buckner admitted that, although he had not seen Laura Nolen purchase cocaine, it was clear to him that she was buying cocaine from McGrath. Buckner last saw Laura Nolen use cocaine in June or July 2004, shortly before he was forced to move out of the McGrath–Ruprecht residence.

Under the supervision of Det. Skorczewski, Buckner conducted a controlled buy of cocaine at the McGrath–Ruprecht residence. McGrath, Pamela Lazor, and Laura Nolen were present at the residence when Buckner arrived. The three women left when Ruprecht arrived at the residence, and the controlled buy of cocaine between Buckner and Ruprecht occurred after the women's departure.

On November 1, 8, and 15, 2004, Sgt. Fossum conducted searches of the garbage set out at curbside for weekly pickup at the Nolen residence. During the November 1 search, Sgt. Fossum located a plastic bag that he believed smelled of and contained traces of marijuana. The November 8 search produced two plastic bags that Sgt. Fossum believed contained traces of marijuana. Sgt. Fossum retrieved another plastic bag with suspected marijuana residue during the November 15 search. Each bag later tested positive for the presence of marijuana.

On November 16, 2004, Det. Skorczewski submitted to a Hennepin County district judge applications and supporting affidavits for search warrants for the Nolen and McGrath–Ruprecht residences. The district judge signed the search warrants, but not before the judge limited the scope of the search warrant for the Nolen residence by removing references to instru-

mentalities of sales and distribution of controlled substances. With the assistance of other law-enforcement officers, Det. Skorczewski executed the search warrant for the Nolen residence on November 19, 2004. Laura Nolen, Julius Nolen, McGrath, and Lazor were present at the Nolen residence during the search.[1] Cocaine and marijuana were seized during the search of the residence. Cocaine also was recovered from McGrath's pants.

The state filed an eight-count complaint charging defendants McGrath, Ruprecht, Lazor, Laura Nolen, and Julius Nolen with one count of fifth-degree possession of a controlled substance, in violation of Minn. Stat. § 152.025, subd. 2(1) (2004). McGrath, Laura Nolen, and Julius Nolen also were charged with one count of child endangerment, in violation of Minn.Stat. § 609.378, subd. 1(b)(2) (2004). The state later filed amended complaints against each party individually that were otherwise identical to the original complaint.[2]

The defendants challenged the constitutionality of the search of the Nolen residence, arguing that the information contained in the search-warrant affidavit was insufficient to establish probable cause. Specifically, the defendants challenged the veracity of the affiant and the accuracy of the search-warrant affidavit.

On March 2, 2005, a *Franks*[3] hearing was held at which Det. Skorczewski was

the only witness. The district court determined that Det. Skorczewski had recklessly disregarded the truth by referring to Buckner as a "concerned citizen" in the search-warrant application and by withholding from the issuing judge relevant information that was necessary to assess Buckner's credibility and reliability. The district court also determined that, because they merely supplied evidence of noncriminal, personal use of marijuana, the bags containing marijuana residue seized during the garbage searches did not establish an independent basis for probable cause.[4] Therefore, the district court suppressed the evidence seized during the search of the Nolen residence.

The state appealed the district court's order. Because the issues in each case are identical, we consolidated the appeals.

## ISSUE

Do the totality of the circumstances support a finding of probable cause to issue a search warrant for the Nolen residence?

## ANALYSIS

### A.

▮▮▮ When the state appeals a pretrial suppression order, the state "must 'clearly and unequivocally' show both that the trial court's order will have a 'critical impact' on the state's ability to prosecute the defen-

---

1. Ruprecht was searched in his vehicle after leaving the Nolen residence shortly before the execution of the search warrant. Officers seized 2.5 grams of cocaine from his possession.

2. The state dismissed the child-endangerment charge against McGrath and the controlled-substance charge against Lazor.

3. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978) (permitting an evidentiary hearing to challenge the validity of a search-warrant affidavit

upon allegations of deliberate falsehood or of reckless disregard for the truth accompanied by an offer of proof).

4. Respondents do not challenge the search warrant for the McGrath–Ruprecht residence. Although the district court found that Det. Skorczewski similarly exhibited a reckless disregard for the truth in statements contained in that search-warrant affidavit, the controlled buy of cocaine provided an independent basis for probable cause to search the McGrath–Ruprecht residence.

dant successfully and that the order constituted error." *State v. Scott,* 584 N.W.2d 412, 416 (Minn.1998) (citing *State v. Zanter,* 535 N.W.2d 624, 630 (Minn.1995)). Thus, as an initial matter, we must determine whether the district court's order suppressing evidence will have a critical impact on the state's case against the defendants. Appellate review of the decision to suppress evidence is precluded if the decision does not have a critical impact on the state's case. *Id.* When the likelihood of a successful prosecution is significantly reduced by the unavailability of the suppressed evidence, the critical-impact standard is met. *State v. Kim,* 398 N.W.2d 544, 550–51 (Minn.1987).

■ The state asserts that, without the evidence seized from the Nolen residence, there is no likelihood of a successful prosecution. For each respondent, the drug-possession and child-endangerment charges arise from the execution of the search warrant at the Nolen residence and the evidence obtained during that search. Because no other evidentiary basis for the charges in the complaints exists, we conclude that suppression of the evidence seized from the Nolen residence has a critical impact on the state's ability to prosecute these cases.

#### B.

■ The state contends that the district court erred when it (1) determined that the affidavit Det. Skorczewski executed in support of the search-warrant application contained reckless misrepresentations of material fact and (2) declined to use the marijuana evidence seized during the garbage searches as an independent basis for probable cause. When determining whether a search warrant is supported by probable cause, we do not engage in a de novo review. *State v. Papadakis,* 643 N.W.2d 349, 355 (Minn.App.2002). Rath-

er, giving great deference to the issuing judge's finding of probable cause, we limit our review to ensuring that the issuing judge had a substantial basis for concluding that probable cause existed. *State v. Rochefort,* 631 N.W.2d 802, 804 (Minn. 2001); *see also State v. Harris,* 589 N.W.2d 782, 787–88 (Minn.1999); *Papadakis,* 643 N.W.2d at 355. A substantial basis in this context means a "fair probability," given the totality of the circumstances. *Zanter,* 535 N.W.2d at 633 (quoting *Ill. v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). Thus, we consider whether, according to all the information in the affidavit, including statements as to the " 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332).

■ The affidavit must supply specific facts to establish a "direct connection, or nexus," between the crime alleged and the place to be searched, "particularly in cases involving the search of a residence for evidence of drug activity." *State v. Souto,* 578 N.W.2d 744, 747–48 (Minn.1998). Because a stale factual basis may invalidate a search warrant, *id.* 749–50, the affidavit also must supply proof of facts so closely related in time to the issuance of the search warrant as to justify a finding of probable cause at the time, *State v. Jannetta,* 355 N.W.2d 189, 193 (Minn.App. 1984), *review denied* (Minn. Jan. 14, 1985).

■ Our first consideration is whether the search-warrant application, including the affidavit, is facially sufficient to support a finding of probable cause. Because the search-warrant application is clear and unambiguous, we do not look beyond the four corners of the document to find "an intent and an authority not expressed

within." *State v. Alt,* 469 N.W.2d 732, 734 (Minn.App.1991).

Det. Skorczewski's affidavit contains detailed information regarding his training and experience in drug-related investigations, along with his past experience executing search warrants. The affidavit describes the Nolens and their residence with particularity and relates Det. Skorczewski's knowledge of the Nolens' drug-related activities based on statements by an anonymous source described as a "concerned citizen." The affidavit describes the three garbage searches and the evidence seized from them. Finally, the affidavit describes the basis for a criminal investigation of the Nolen residence.

The search-warrant application, including Det. Skorczewski's affidavit, is facially valid, supplying relevant information necessary to establish probable cause in support of a search warrant. Thus, the issuing judge did not err in issuing the search warrant for the Nolen residence based on the information presented.

Because respondents challenged the accuracy and veracity of the statements contained in Det. Skorczewski's affidavit, our analysis does not end with our determination of the search-warrant application's facial validity. Although a presumption of validity attaches to a search-warrant affidavit, this presumption is overcome when the affidavit is shown to be the product of deliberate falsehood or reckless disregard for the truth. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. A search warrant may be deemed void and the fruits of the search suppressed when it is demonstrated by a preponderance of the evidence that the affiant knowingly or with reckless disregard for the truth included a false statement in the affidavit. *Id.* at 156, 98 S.Ct. at 2676; *Elec. Fetus Co. v. City of Duluth,* 547 N.W.2d 448, 452 (Minn.App. 1996), *review denied* (Minn. Aug. 6, 1996).

Innocent or negligent misrepresentations will not invalidate a search warrant. *State v. Moore,* 438 N.W.2d 101, 105 (Minn. 1989). But "[a] search warrant is void, and the fruits of the search must be excluded, if the application includes intentional or reckless misrepresentations of fact *material* to the findings of probable cause." *Id.* (emphasis added). If an affiant deliberately falsified information or recklessly disregarded the truth in order to obtain the search warrant, we set aside the false statements and supply the omissions to decide whether the affidavit as modified establishes probable cause. *State v. Doyle,* 336 N.W.2d 247, 250 (Minn.1983).

The state contends that the district court erred when it determined that the affidavit contained reckless misrepresentations of material fact. In reviewing the veracity and accuracy of the affidavit, we carefully examine the statements contained therein to determine whether Det. Skorczewski deliberately or recklessly misled the issuing judge when he referred to Buckner as a "concerned citizen." A "concerned citizen" is an informant who provides information in his or her capacity as a witness to a crime, for whom a law enforcement officer is relieved of having to establish credibility and veracity independently through corroboration or a history of providing reliable information. *See* 2 Wayne R. LaFave, *Search & Seizure* § 3.4(a), at 219–21 (2004). The motive to supply information to police distinguishes a concerned citizen from other informants who are motivated by a desire for leniency or immunity from prosecution. A concerned citizen acts with an intent to aid law enforcement out of concern for society or for personal safety. *Erickson v. State,* 507 P.2d 508, 518 (Alaska 1973). The term "concerned citizen," therefore, conveys a preferred status as to the credibility of the information supplied. *Whitten v. State,*

174 Ga.App. 867, 331 S.E.2d 912, 913–14 (1985); *see Cundiff v. United States,* 501 F.2d 188, 190 (8th Cir.1974) (holding that personal and recent knowledge of concerned citizen was sufficient to establish probable cause to issue search warrant); *see also United States v. Scalia,* 993 F.2d 984, 987 (1st Cir.1993) (providing that an affidavit need not demonstrate record of previous reliability to establish the veracity of a "concerned citizen"); *Davis v. State,* 214 Ga.App. 36, 447 S.E.2d 68, 70 (1994) (denying "concerned citizen" status to an informant when affiant did not provide factual basis for the credibility of his information); *State v. White,* 196 Ga.App. 685, 396 S.E.2d 601, 603 (1990) ("[B]efore an [informant] can be elevated to the status of 'concerned citizen,' thereby gaining entitlement to the preferred status regarding credibility concomitant with that title, there must be placed before the [issuing judge] facts from which it can be concluded that the [informant] is, in fact, a 'concerned citizen.' "); *State v. Rangeloff,* 580 N.W.2d 593, 600 (N.D.1998) (stating the presumption of reliability of "citizen informants"); *State v. Kerr,* 181 Wis.2d 372, 511 N.W.2d 586, 589 (1994) (permitting an assumption of credibility when dealing with an "average citizen").

■ When we apply this definition of the term "concerned citizen," the record clearly supports the district court's determination that Det. Skorczewski recklessly disregarded the truth when using the term to describe Buckner. Det. Skorczewski included the following description of Buckner and his knowledge in the search-warrant affidavit:

> In October of 2004, Your Affiant learned from a Concerned Citizen [CC] of drug activity in the City of Minneapolis, County of Hennepin. More specific, the (CC) stated a female by the name of Laura Ann Nolen who lives at 5731 Thomas Ave. South in the City of Mpls., is using cocaine and marijuana. The (CC) states she is married to a Julius Nolen and that they have a young child. The (CC) has observed Laura Nolen use cocaine in the past month. The (CC) stated Laura purchases the cocaine from a female by the name of Amy Susan McGrath DOB/11–27–63. The (CC) stated that Laura Nolen works for the City of Minneapolis and her husband Julius Nolen works for Hennepin County. The (CC) is known to Your Affiant.

As this excerpt demonstrates, Det. Skorczewski's affidavit relies heavily on the statements of Buckner as a "concerned citizen," without establishing any details regarding Buckner that would provide insight as to his credibility or motive to cooperate with the investigation.

Det. Skorczewski's affidavit fails to disclose relevant facts about Buckner that are critical to an informed judgment of his credibility and veracity. For example, Buckner has an extensive criminal record in Minnesota and several other states. Buckner has eight felony convictions for offenses, including drug possession and theft. He has used more than 20 aliases. In short, he is a repeat offender with a propensity for lying that undermines his credibility and reliability.

At the time of the interviews, Buckner was a drug addict in police custody facing serious criminal charges. Buckner had admitted committing seven armed robberies of local pharmacies to support his addiction to OxyContin, a Schedule II drug under the Controlled Substances Act. *See* Minn.Stat. § 152.02, subd. 3(a) (2004). Buckner also admitted a history of cocaine addiction. None of this information is included in the affidavit.

Det. Skorczewski's characterization of Buckner as a "concerned citizen" is false and misleading. Given his criminal history

and ongoing participation in criminal activity, Buckner is not a concerned citizen. Rather, he is a confidential informant, whose credibility and reliability must be bolstered by statements regarding a history of providing accurate information in prior criminal investigations. *State v. Siegfried,* 274 N.W.2d 113, 114–15 (Minn. 1978); *see also State v. Reese,* 446 N.W.2d 173, 177 (Minn.App.1989), *review denied* (Minn. Nov. 15, 1989); *State v. Gabbert,* 411 N.W.2d 209, 212–13 (Minn.App.1987). As the *Siegfried* court determined, the credibility of an informant akin to Buckner cannot be assumed. 274 N.W.2d at 114–15.

> [I]t is not enough that the affidavit states in a conclusory fashion that [an informant] is credible or reliable. Rather, the affidavit must provide the [issuing judge] with adequate information from which [the judge] can personally assess the informant's credibility. This is often done by showing that the informant has a track record, e. g., by showing that in the past the information he has given the police has been accurate.

*Id.* Indeed, *Siegfried* makes evident that Det. Skorczewski's affidavit omitted information about Buckner's credibility that is crucial to the issuing judge's credibility assessment.

■ Det. Skorczewski's affidavit also contained erroneous statements regarding Buckner's knowledge of Laura Nolen's drug use. By the time Det. Skorczewski applied for the search warrant in November, approximately four months had passed since Buckner had observed Laura Nolen using cocaine at the McGrath–Ruprecht residence. But the affidavit states that Buckner's observation occurred one month prior to the date of the affidavit. The affidavit also refers to cocaine sales from McGrath to Laura Nolen, falsely implying that Buckner witnessed this activity

or had direct knowledge of it. But Buckner did not witness Laura Nolen purchase cocaine, nor did he have any information relating to such sales.

When asked why he did not present information about Buckner's drug addiction, criminal record, and recent criminal activity to the issuing judge, Det. Skorczewski replied, "I don't know." Det. Skorczewski then indicated that such information was not needed because he considered Buckner to be a concerned citizen at that time. We disagree. By elevating Buckner to the status of a "concerned citizen," whose credibility as an informant is presumed, the need for the issuing judge to scrutinize the informant's motive and credibility was obscured. Buckner's credibility and reliability were not those of a neutral, independent citizen-witness. The issuing judge should have been informed about the true nature of the source of the information. *Id.* The district court correctly determined that the issuing judge was misled as to "the credibility of, and the source of, the information provided."

We also agree with the district court's conclusion that Det. Skorczewski's statements as to Buckner's credibility as a "concerned citizen" demonstrate a reckless disregard for the truth. Details such as Buckner's criminal history, use of aliases, and pending charges were relevant to a finding of probable cause. A veteran law enforcement officer, such as Det. Skorczewski, with more than ten years' experience, including the preparation of more than 115 affidavits in support of search warrants, should have known the relevance of this information and presented it to the issuing judge. Because the omissions from the affidavit demonstrate a reckless disregard for the truth that hindered the issuing judge's opportunity to meaningfully assess the informant's credibility, the district court did not err in its determina-

tion that the affidavits contained reckless misrepresentations of fact that undermined the finding of probable cause.

 In light of our conclusion that the search-warrant affidavit included reckless misrepresentations of fact, we next consider whether the reckless misrepresentations are material to the determination of probable cause. In doing so, we set aside Skorczewski's misleading statements, and supply any omissions regarding Buckner to determine whether any basis for finding probable cause remains. *Doyle,* 336 N.W.2d at 250; *State v. Smith,* 448 N.W.2d 550, 555–56 (Minn.App.1989) (holding that reckless misrepresentation is "material" if there is not probable cause to issue search warrant when misrepresentation is set aside), *review denied* (Minn. Dec. 29, 1989). If after this rehabilitation there is sufficient information to sustain a finding of probable cause, the search warrant is not void. *Elec. Fetus Co.,* 547 N.W.2d at 452.

The state contends that probable cause to issue the search warrant was independently established by the evidence seized during three curbside garbage searches conducted at the Nolen residence. From these searches, police recovered four plastic bags that tested positive for the presence of marijuana. The district court concluded that the evidence retrieved from the Nolens' garbage was insufficient to establish probable cause to search the Nolen residence because (1) the evidence merely demonstrated personal use of marijuana, and (2) possession of a small amount of marijuana is a petty misdemeanor—not a crime, which is an enumerated ground for issuing a search warrant. Minn.Stat. § 626.07(3) (2004) ("A search warrant may be issued upon any of the following grounds: . . . [t]he possession of the property or things constitutes a crime[.]"); *see* Minn.Stat. § 152.027, subd. 4 (2004) (stat-

ing that possession of small amount of marijuana is petty misdemeanor); Minn. Stat. § 609.02, subd. 4 (2004) (stating that petty misdemeanor is not a crime).

 Probable cause to issue a search warrant requires a fair probability to believe that contraband or evidence of a crime will be found in the location to be searched. *Harris,* 589 N.W.2d at 788; *Zanter,* 535 N.W.2d at 633. Indeed, probable cause requires " 'only a probability or substantial chance of criminal activity, not an actual showing of such activity,' . . . the significant fact being 'not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts.' " *Olson v. Comm'r of Pub. Safety,* 371 N.W.2d 552, 555 (Minn.1985) (quoting *Gates,* 462 U.S. at 244 n. 13, 103 S.Ct. at 2335 n. 13). Innocent or noncriminal activity can contribute to the totality of the circumstances on which a finding of probable cause is based. *State v. Martinson,* 581 N.W.2d 846, 852 (Minn.1998) (citing *State v. Johnson,* 444 N.W.2d 824, 826–27 (Minn.1989)). "When determining whether there is probable cause, the 'ultimate inquiry is not whether there is some hypothesis of . . . "innocence" which is reasonably consistent with the circumstances shown.' " *State v. Hawkins,* 622 N.W.2d 576, 580 (Minn.App. 2001) (quoting *United States v. Sanchez,* 689 F.2d 508, 515 (5th Cir.1982)).

 Contraband seized from a garbage search can provide an independent and substantial basis for a probable-cause determination. *Papadakis,* 643 N.W.2d at 356 (finding that spoon with burn marks and plastic bag containing cocaine residue were sufficient to establish probable cause for search); *see also State v. Goebel,* 654 N.W.2d 700, 702 (Minn.App.2002) (spoon with cocaine residue). In *State v. Dreyer,* marijuana residue retrieved during a residential garbage search led to the issuance

of a constitutionally valid search warrant for a residence. 345 N.W.2d 249, 250 (Minn.1984). Respondents contend that the district court was correct when it determined that the plastic bags with marijuana residue were insufficient to establish probable cause because possession of small amounts of marijuana is noncriminal. We rejected a similar argument in *State v. Skapyak*, 702 N.W.2d 331, 334 (Minn.App. 2005), *review denied* (Minn. Oct. 18, 2005). In *Skapyak* we noted that possession of even small amounts of a controlled substance like marijuana is sufficient to put "the possessor on notice of the illegality of his actions." *Id.* (citing *State v. Benniefield*, 678 N.W.2d 42, 48 (Minn.2004)). Moreover, the test is not whether the residual amounts of marijuana are criminal. Rather, the test is whether those amounts support a reasonable expectation that more marijuana or other evidence of criminal activity will be found on the premises. *State v. Eggler*, 372 N.W.2d 12, 14–15 (Minn.App.1985), *review denied* (Minn. Sept. 19, 1985).

 Minnesota caselaw does not support the district court's determination that small, noncriminal amounts of marijuana cannot establish a fair probability that evidence of a crime or contraband will be found in a particular place. A search-warrant application establishes probable cause if "the affidavit, interpreted in a common-sense and realistic manner, contain[s] information which would warrant a person of reasonable caution to believe that the articles sought are located at the place to be searched." *Rosillo v. State*, 278 N.W.2d 747; 748–49 (Minn.1979). In addition to cocaine, the search-warrant application and affidavit sought other controlled substances, including marijuana, and narcotics paraphernalia. After supplying the omissions and correcting the erroneous information contained in the affidavit relating to the informant's veracity, we conclude that the plastic bags with marijuana residue provided an independent and substantial basis to establish probable cause to issue a search warrant for the Nolen residence.

Our probable-cause analysis requires us to examine two final issues: the staleness of the evidence used to support probable cause and the nexus between the alleged crime and the particular place to be searched.

 The evidence supporting a finding of probable cause must be closely related in time to the issuance of the search warrant so as to justify a finding of probable cause at the time the search is to be conducted. *Jannetta*, 355 N.W.2d at 193. Factors such as "whether there is any indication of ongoing criminal activity, whether the items sought are innocuous or incriminating, and whether the property sought is easily disposable or transferable" are relevant to our consideration of whether the information supporting the search warrant is stale. *State v. DeWald*, 463 N.W.2d 741, 746 (Minn.1990).

Unlike Laura Nolen's alleged cocaine use reported by Buckner, the evidence of marijuana use was obtained shortly before the search warrant was sought. The first evidence of this type was seized three weeks before the search warrant was sought. Two additional searches produced similar evidence. And the last garbage search occurred only one day before the application was made and two days before the search warrant was executed. The recovery of discarded bags with marijuana residue on a weekly basis is indicative of ongoing activity of an illegal nature. Thus, the evidence recovered from the garbage searches was not stale.

This evidence also supplies the "direct connection, or nexus, between the alleged crime and the particular place to be

searched" necessary to establish probable cause. *Souto*, 578 N.W.2d at 747.

Based on the totality of the circumstances, we conclude that there was probable cause to issue the search warrant for the Nolen residence and that the district court erred in suppressing the evidence seized during the search.

### C.

 As a final matter, without regard for well-established precedent, respondent Laura Nolen invites us to rule that garbage searches are per se unreasonable under Minnesota law. We decline to do so. "It is, as the United States Supreme Court points out, 'common knowledge' that plastic garbage bags left on or beside a public street are vulnerable to any number of invasions, whether from animals or members of the public." *State v. Goebel*, 654 N.W.2d 700, 703–04 (Minn. App.2002) (quoting *California v. Greenwood*, 486 U.S. 35, 40, 108 S.Ct. 1625, 1628–29, 100 L.Ed.2d 30 (1988)). As a result, the expectation of privacy in garbage placed at curbside for normal pickup is eroded. *Id.* The Minnesota Supreme Court has recognized that "a householder may ordinarily have some expectation of privacy in the items he places in his garbage can." *State v. Oquist*, 327 N.W.2d 587, 591 (Minn.1982). However, when a police officer searches trash set on the curb for routine pickup without trespassing on the premises, an unreasonable search has not occurred. *Dreyer*, 345 N.W.2d at 250.

According to the search-warrant affidavit, each of the three garbage searches was conducted on garbage set out at curbside for normal pickup. There is no evidence that any of the searches exceeded the constitutionally permissible bounds. Accordingly, these searches were not unreasonable.

### DECISION

Notwithstanding reckless misrepresentations of fact by the affiant in the search-warrant application, the evidence of ongoing marijuana possession and use retrieved from respondents' curbside garbage supplied an independent basis sufficient to establish probable cause to issue the search warrant. The district court, therefore, erred by suppressing the evidence seized during the search.

**Reversed and remanded.**