*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1282**


State of Minnesota,
Appellant,

vs.

Torrence Cortez Epps,
Respondent.


**Filed December 1, 2014**
**Reversed and remanded**
**Bjorkman, Judge**


Hennepin County District Court
File No. 27-CR-13-17452

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for appellant)

Melvin R. Welch, Welch Law Firm, St. Paul, Minnesota (for respondent)

        Considered and decided by Connolly, Presiding Judge; Bjorkman, Judge; and

Toussaint, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant State of Minnesota challenges a pretrial suppression order, arguing the district court erred in concluding that there was no probable cause to issue a search warrant. We reverse and remand.

## FACTS

In March 2013, Officer Lucas Peterson of the Minneapolis Police Department received information from a confidential reliable informant (CRI) that heroin was being stored, packaged, and sold from a house located at 3807 Dupont Avenue North. The CRI identified the seller by name as respondent Torrence Epps, and positively identified Epps in a photograph.

The CRI informed Officer Peterson that Epps sometimes concealed narcotics outside of the house "near the rear yard or in his large conversion van." The CRI specifically told Officer Peterson that within the last 72 hours he was inside the house and personally observed Epps "selling small quantities of [h]eroin that he had just packaged." The CRI also stated that Epps was armed with a small black handgun at the time. Officer Peterson's investigation revealed that Epps is not eligible to possess a firearm.

Officer Peterson subsequently conducted surveillance, during which he saw multiple individuals enter the house and depart after a short period of time. Officer Peterson also observed Epps retrieve something from a GMC conversion van with a license-plate number that matched the one that the CRI provided. Officer Peterson

applied for a search warrant, outlining the information above in his supporting affidavit. In the affidavit, Officer Peterson also stated that the CRI had previously provided information that led to the arrest and prosecution of narcotics traffickers. A warrant was issued, and during a search of the residence police discovered 54 grams of heroin.

The state charged Epps with two counts of first-degree controlled-substance crime. Epps moved to suppress the evidence seized during the search. The district court granted the motion, concluding that there was not probable cause to issue a search warrant because the affidavit did not establish that the CRI was reliable. The state appeals.

## DECISION

When appealing a pretrial suppression order, the state must "clearly and unequivocally" show that the district court's order will have a critical impact on the state's ability to prosecute the defendant successfully and that the order is erroneous. *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998) (quotation omitted). The critical-impact standard is met when the likelihood of a prosecution is significantly reduced by the unavailability of suppressed evidence. *State v. McGrath*, 706 N.W.2d 532, 539 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006). Epps does not challenge the state's assertion that suppression of the heroin seized during the warranted search prevents the state from prosecuting him for controlled-substance offenses. We agree and conclude that the state has satisfied the critical-impact requirement.

When determining whether a search warrant is supported by probable cause, we do not engage in de novo review. *Id.* A reviewing court must give deference to the issuing magistrate's determination of probable cause, and uphold the determination if

3

there was a substantial basis for concluding that probable cause existed. *State v. Albrecht*, 465 N.W.2d 107, 109 (Minn. App. 1991). A substantial basis means a "fair probability," given the totality of the circumstances, "that contraband or evidence of a crime will be found in a particular place." *State v. Zanter*, 535 N.W.2d 624, 633 (Minn. 1995). In assessing the sufficiency of an affidavit supporting a warrant application, we are careful not to review each component of the affidavit in isolation. *Albrecht*, 465 N.W.2d at 109.

Where probable cause is based on an informant's tip, the informant's veracity and the basis of knowledge are considered under the totality-of-the-circumstances test. *State v. Ward*, 580 N.W.2d 67, 71 (Minn. App. 1998). The credibility of an informant is not assumed, and the affidavit must provide the magistrate with "adequate information from which he can personally assess the informant's credibility." *State v. Siegfried*, 274 N.W.2d 113, 114 (Minn. 1978). "Recent personal observation of incriminating conduct has traditionally been the preferred basis for an informant's knowledge." *State v. Wiley*, 366 N.W.2d 265, 269 (Minn. 1985). The fact that police can corroborate part of the informer's tip as truthful may suggest that the entire tip is reliable. *Siegfried*, 274 N.W.2d at 115. Police may also establish that an informant is credible by showing that the informant has a "track record" of providing accurate information. *Id.* at 114-15.

The state argues that there was ample information in the affidavit to establish that the CRI's tip was reliable. We agree. First, within the last 72 hours, the CRI was inside the house with Epps and saw him packaging and selling heroin. The CRI personally observed that Epps was armed with a gun at the home. And the CRI reported that Epps

4

stored larger amounts of heroin outside the house or in his van. The specificity of this information, which was based on the CRI's personal observations, indicates that the tip was reliable. *See State v. Cook*, 610 N.W.2d 664, 668 (Minn. App. 2000) (stating that the assessment of a CRI's basis of knowledge "involves consideration of the quantity and quality of detail in the CRI's report"), *review denied* (Minn. July 25, 2000).

Second, the affidavit described the CRI's successful track record, which included providing information to Officer Peterson that "led to the arrest of narcotic traffickers and the seizure of narcotics, weapons, ammunition, property and amounts of money which have been prosecuted within the State and Federal court system." While Epps argues that the affidavit should have included far more detail regarding the CRI's relationship with police, it is not necessary for law enforcement "to provide specifics of the informant's past veracity." *State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004). An affidavit can establish an informant's proven track record "by a simple statement that the informant has been reliable in the past." *Id.*

Third, Officer Peterson corroborated various aspects of the CRI's tip and independently observed activity consistent with drug sales. In the affidavit, Officer Peterson indicated that he confirmed Epps's identity and presence at the address provided by the CRI. During surveillance, Officer Peterson identified a conversion van bearing the license-plate number the CRI reported outside of the house. And Officer Peterson observed Epps retrieve an unidentified object from the van. While these details may not be highly incriminating on their face, a reviewing magistrate may rely on even minimal corroboration in assessing the totality of circumstances. *State v. McCloskey*, 453 N.W.2d

5

700, 704 (Minn. 1990). And, corroborating part of an informant's tip may suggest that the entire tip is reliable. *Siegfried*, 274 N.W.2d at 115; *see also Wiley*, 366 N.W.2d at 269 (stating that even corroboration of facts that are not "key details" lends "credence to the informant's tip").

Moreover, Officer Peterson observed foot traffic off of Dowling Avenue North that "proceeded to Epps front door and was allowed admittance by an unknown female." According to the affidavit, these individuals "stayed only a short time period and then departed on foot." Officer Peterson noted that in his experience investigating drug crimes, frequent foot traffic of this type was consistent with drug trafficking. The district court read these statements to mean Officer Peterson "observed that a female visitor came to the residence on foot and left after a short period of time." This mistake is significant. The observation of multiple, brief visitors supports a far stronger inference of drug trafficking than the presence of only one visitor.

Finally, we bear in mind that "the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants." *McCloskey*, 453 N.W.2d at 704 (quotation omitted). For the reasons discussed above, we conclude that the totality of the circumstances shows this is not a "doubtful or marginal" case. Rather, there was a substantial basis for concluding that probable cause existed to support the warrant, and evidence seized pursuant to that warrant should not be suppressed.

**Reversed and remanded.**

6