*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A16-0295

State of Minnesota,
Respondent,

vs.

Dennis James McCormick,
Appellant.

**Filed January 17, 2017**
**Affirmed**
**Bjorkman, Judge**

Meeker County District Court
File No. 47-CR-14-867

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Brandi Schiefelbein, Meeker County Attorney, John P. Fitzgerald, Assistant County Attorney, Litchfield, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Melissa Sheridan, Assistant Public Defender, Eagan, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Connolly, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**BJORKMAN**, Judge

Appellant challenges his conviction of first-degree controlled-substance crime, arguing the district court erred in refusing to suppress evidence obtained following the

execution of a search warrant because the warrant application contained material misrepresentations and omitted material facts. We affirm.

## FACTS

In September 2014, Investigator Jason Mathwig of the Renville County Sheriff's Office was investigating a series of property crimes that occurred over the summer. The stolen items included a lawn tractor, a pickup truck, and an ice auger. Investigator Mathwig learned that Nicholas Schmitz and George Reck were responsible for some of the thefts. Law enforcement executed a search warrant at Reck's residence and recovered parts from the stolen pickup truck. Reck and Schmitz were subsequently charged with crimes related to the theft of the pickup truck and ice auger.

On September 19, Schmitz met with Investigator Mathwig and gave three recorded statements. Schmitz agreed to cooperate with law enforcement and provide information relating to a number of unsolved thefts. In exchange for the information, Schmitz would not be held criminally liable for those thefts, but would pay restitution. Schmitz implicated himself and Reck in the theft of the pickup truck and ice auger. He also told Investigator Mathwig that Reck stole the lawn tractor.

According to Schmitz, Reck gave the lawn tractor to his drug dealer in exchange for forgiveness of an $800 debt, methamphetamine, and a different lawn mower. Schmitz identified the drug dealer as "Casey McCormick's dad" and indicated he had been to the drug dealer's house. He was not sure exactly where the house was, but gave a general location based on the route he and Reck traveled. He also stated he knew the house was on a lake because he waited in his car next to a boat landing while Reck went to the

2

house.  Schmitz consulted a map and initially suggested that the house might be on Lake Todd, but quickly determined he was wrong after Investigator Mathwig informed him Lake Todd was swamp-like and did not have a landing.  Investigator Mathwig suggested it might be the lake immediately north of Lake Todd, Lake Jennie.  Schmitz looked at the map of Lake Jennie and pointed out where the drug dealer's house was located.  Investigator Mathwig later consulted with Conservation Officer Wayne Hatlestad who indicated that Casey McCormick and his father, appellant Dennis James McCormick, lived at the house in question.

On September 23, Investigator Mathwig applied for and obtained a warrant to search the curtilage of McCormick's residence for the lawn tractor and ice auger.  But rather than executing the warrant, Investigator Mathwig conducted additional surveillance of the residence.  On September 27, he observed a lawn tractor that was similar to the photos he had seen of the stolen lawn tractor.  On September 29, Investigator Mathwig applied for, and was granted, another search warrant.  The second application included his observation of the lawn tractor.  In addition to authorizing law enforcement to search the curtilage of the house, the second warrant authorized a search of the residence for "receipt(s), note(s), journal(s), ledger(s) and/or other document(s) involving the record keeping of debts owed and/or satisfied."

On September 30, law enforcement officers executed the second search warrant.  Investigator Mathwig discovered the stolen lawn tractor and ice auger in the garage.  Officers also discovered two small bags of suspected methamphetamine in plain view on top of the bed and dresser in McCormick's bedroom.  A field test indicated the presence

3

of methamphetamine. Based on this discovery, Deputy Brian Cruze of the Meeker County Sheriff's Office applied for, and was granted, a warrant to search the residence for evidence of controlled-substance crimes. Execution of the third warrant revealed 404.54 grams of methamphetamine.

Respondent State of Minnesota charged McCormick with first-degree controlled-substance crime and receiving stolen property. McCormick moved to suppress all evidence obtained as a result of the first search, arguing the second search-warrant application contained material misstatements of facts and omissions. Following a hearing, the district court denied the motion. McCormick waived his right to a jury trial and submitted the case to the district court on stipulated facts to preserve appeal of the suppression issue. The district court found McCormick guilty of first-degree controlled-substance crime.[1] McCormick appeals.

## DECISION

When reviewing whether there was probable cause to issue a search warrant, we "afford the district court's determination great deference." *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001). We review the district court's determination to ensure that there was a substantial basis to conclude that probable cause existed. *State v. Harris*, 589 N.W.2d 782, 788 (Minn. 1999). A substantial basis in this context means a "fair probability," given the totality of the circumstances, "that contraband or evidence of a

---

[1] Because the stipulated facts do not include any reference to the stolen lawn tractor or ice auger, the district court determined there was no evidence that McCormick received stolen property.

4

crime will be found in a particular place." *State v. Zanter*, 535 N.W.2d 624, 633 (Minn. 1995) (quotation omitted).

Search warrant applications are presumed valid. *State v. McGrath*, 706 N.W.2d 532, 540 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006). But this presumption may be overcome if the warrant application "is shown to be the product of deliberate falsehood or reckless disregard for the truth." *Id.* A defendant challenging a search warrant must show that the affiant made a statement with deliberate or reckless disregard for the truth and that the statement was material to the probable-cause determination. *State v. Andersen*, 784 N.W.2d 320, 327 (Minn. 2010). Innocent or negligent misrepresentations or omissions do not render a search warrant invalid. *State v. Moore*, 438 N.W.2d 101, 105 (Minn. 1989). A misrepresentation or omission is material if, when the misrepresented information is removed, or the omitted information is included, probable cause to issue the warrant no longer exists. *State v. Mems*, 708 N.W.2d 526, 532 (Minn. 2006). Whether misrepresentations or omissions were made with deliberate or reckless disregard for the truth is a question of fact that we review for clear error. *Andersen*, 784 N.W.2d at 327. But we review the materiality of misrepresentations or omissions de novo. *Id.*

McCormick alleges three material misrepresentations or omissions in the search-warrant application. And he contends that even if the warrant application establishes probable cause to search McCormick's property for the stolen items, it does not establish probable cause to search for documents relating to drug transactions. We address each argument in turn.

5

First, McCormick argues that Investigator Mathwig misrepresented the process by which Schmitz identified McCormick's property by deliberately omitting the fact that Schmitz initially identified Lake Todd to give the impression Schmitz knew exactly where McCormick lived. The district court rejected this argument, finding that the omission was not made with deliberate or reckless disregard for the truth because it is clear that Schmitz's initial identification of Lake Todd "was a minor error that was quickly corrected." This finding is not clearly erroneous.

Schmitz first indicated that he knew the drug dealer lived on a lake because he waited in the car next to the boat landing while Reck was in the residence. Schmitz initially identified Lake Todd, but immediately retracted that identification after being informed that Lake Todd is swamp-like and does not have a landing. He then looked at the next closest lake, Lake Jennie, identified the landing, and described precisely where the property was in relation to the landing. This record supports the district court's determination that Schmitz's identification of Lake Todd was a minor error that was quickly corrected. As such, Investigator Mathwig's failure to include this fact was immaterial. At most the omission was negligent; it certainly did not reflect reckless or deliberate disregard for the truth necessary to invalidate a search warrant. *Moore*, 438 N.W.2d at 105.

Second, McCormick argues that Investigator Mathwig deliberately misrepresented the purpose of Schmitz and Reck's trip to the McCormick property. The warrant application states that the two men went to the property to purchase methamphetamine; Schmitz's recorded statements do not reveal the purpose of the trip. The district court

6

found that this was a misstatement of the facts but was not intentionally misleading because it was based on reasonable inferences drawn from the facts Schmitz provided. This finding is not clearly erroneous. Schmitz told Investigator Mathwig that Reck was a regular methamphetamine user, that "Casey McCormick's dad" was his dealer, and that Reck traded the lawn tractor to his dealer in exchange for the forgiveness of a drug debt and additional methamphetamine. Additionally, Schmitz stated he waited in the car while Reck went to the property, suggesting it was likely a short trip. These facts support the district court's finding that Investigator Mathwig did not intentionally misrepresent the purpose of the trip to the property so as to invalidate the search warrant.

Third, McCormick contends that the warrant is invalid because the application did not reference the deal between Schmitz and the state and did not contain information concerning Schmitz's criminal history. The district court determined these omissions were intentional, but not material. An omission is material if, when the omitted information is included, probable cause to issue the warrant no longer exists. *Mems*, 708 N.W.2d at 532. Schmitz was implicated in theft offenses and provided information Investigator Mathwig used in the warrant application to avoid criminal prosecution. Accordingly, Schmitz's information needed to be corroborated. *See McGrath*, 706 N.W.2d at 542 (stating that, unlike a concerned citizen, an informant's credibility and reliability must be bolstered). To the extent it was not, the omitted information would be material. But the district court found that Investigator Mathwig corroborated much of the information and included the corroborating evidence in the search-warrant affidavit. The record supports this finding.

The search-warrant application includes the following corroborating evidence. Schmitz stated that Reck used methamphetamine; a search warrant executed at Reck's house revealed drug paraphernalia consistent with methamphetamine use. Schmitz identified Reck's drug dealer as "Casey McCormick's dad" and provided the general location of his house; Investigator Mathwig confirmed that McCormick and his son, Casey, lived at the subject house. Schmitz indicated that Reck's June 2014 attempt to steal the lawn tractor was interrupted because "Doug Best actually pulled him over on the way to get it"; Investigator Mathwig confirmed that on June 15, 2014, Sergeant Best pulled Reck over and that Reck's vehicle was pulling an empty trailer. Finally, Investigator Mathwig ultimately observed a lawn tractor consistent with the stolen tractor outside of McCormick's house. On this record, we conclude that inclusion of information concerning Schmitz's criminal history and deal with the state would not have changed the probable-cause determination, and was therefore not material.

Finally, McCormick argues that even if the warrant application supports probable cause to search for the stolen items, it does not establish probable cause to search for evidence relating to drug transactions. We disagree. As noted above, we give "great deference" to an issuing magistrate's probable-cause determination. *Rochefort*, 631 N.W.2d at 804. The search-warrant application states that Reck used methamphetamine and identifies his dealer as "Casey McCormick's dad." A search warrant executed at Reck's residence resulted in the discovery of paraphernalia consistent with methamphetamine use. The lawn tractor, which was observed outside of McCormick's residence, had an estimated value of at least $1,500. This supports the assertion that

8

Reck traded the lawn tractor to McCormick in exchange for forgiveness of an $800 debt as well as additional methamphetamine. Finally, Investigator Mathwig indicated that, based on his training and experience, it is not uncommon for drug dealers to keep ledgers due to the complexity of these transactions. On this record, we conclude the warrant application established probable cause to search the residence for evidence relating to drug transactions.

**Affirmed.**